Cousins, Commissioner of Banking, Respondent, vs. Flertzheim and others, Appellants.

*November 16—December 11, 1923.*

*Banks: Trust companies: Double liability of stockholders: Companies organized prior to 1909 and continuing or reorganizing: Assignment and delivery of stock: Failure of president to record transfer: Liability of seller.*

1. Stockholders of trust companies are individually liable to creditors under sec. 2024—44, Stats. 1921, to the amount of their stock at par value, in addition to the amount invested therein, for six months after any transfer of stock, as to affairs of the company at the time and prior to the date of such transfer, notwithstanding sec. 2024—77o, which vests in trust companies existing when the statute was enacted and continuing

or reorganizing in either of the manners specified in ch. 186, Laws of 1909, all their existing rights and liabilities, the purpose of such provision being to preserve their contractual rights and liabilities.   p. 282.

2. The rule as to strict construction of statutes in derogation of the common law is inapplicable where the legislative intent is not ambiguous, obscure, or doubtful.   p. 282.

3. The estate of one who offered to sell his stock in a trust company and who indorsed in blank on the stock certificate a written assignment of and power of attorney to sell and left it with a bank, which sold and delivered it to the president of the trust company more than six months before the commissioner of banking took it over as insolvent, is not liable to creditors, under sec. 2024—44, Stats. 1921, though the stock was never transferred on the company's books, as required by sec. 2024—45, and decedent made no demand to that effect, he being entitled to presume that the president of the company would see that the stock was properly transferred in the absence of knowledge which should reasonably raise a doubt.   p. 286.

APPEALS from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed in part; affirmed in part.*

This action was brought by the commissioner of banking, in his official capacity, to enforce the personal liability of the stockholders of the defunct Citizens Savings & Trust Company. That company was incorporated as a trust company under the laws of this state in the month of July, 1897. On the 2d day of October, 1913, the commissioner of banking took possession of the property and business of said trust company and proceeded to liquidate its affairs as an insolvent. As a part of such liquidation this action was brought against the stockholders of the company to enforce their personal liability, resulting in a judgment against all of said stockholders, from which judgment several of the defendants have appealed.

*Lawrence A. Olwell* of Milwaukee, for the appellants other than *Louisa Flertzheim.*

Cousins v. Flertzheim, 182 Wis. 275.

*Frank T. Boesel* of Milwaukee, for appellant *Louisa Flertzheim,* executrix.

For the appellant executors of the estate of W. A. Starke, deceased, there was a brief by *Houghton, Neelen & Houghton* of Milwaukee, and oral argument by *Albert B. Houghton.*

For the respondent there was a brief by *Fawsett & Smart,* and oral argument by *Charles E. Monroe,* all of Milwaukee.

OWEN, J. Sec. 2024—44, Stats., provides that the stockholders of every bank shall be individually liable, equally and ratably, not one for another, for the benefit of creditors of said bank to the amount of their stock at the par value thereof, in addition to the amount invested in said stock, which liability shall continue for six months after any transfer of stock, as to the affairs of the bank at the time and prior to the date of the transfer. If appellants are liable in this case it is by virtue of that statutory provision. The principal question here presented is whether such provision applies to the stockholders of trust companies. If it does so apply, it is by virtue of ch. 186 of the Laws of 1909. It is conceded that prior to the enactment of said ch. 186 no such liability was imposed upon the stockholders of trust companies.

When the legislature of 1909 convened it found the banking laws set forth in ch. 94 of the Statutes. This chapter was subdivided into four subchapters. The first subchapter established a banking department "which shall have charge of the execution of the laws relating to banks and to banking business in this state," and prescribed the powers and duties of the banking commissioner. Subch. II related to state banks, provided the manner in which they should be incorporated, prescribed their powers, and imposed regulations. By sec. 2024—44 of said subchapter the personal

liability of stockholders was declared as above set forth. Subch. III related to mutual savings banks, provided for their organization, and prescribed regulations. Subch. IV dealt with miscellaneous matters.

At that time trust companies were organized under ch. 86 and were governed by the provisions of secs. 1791*d* to 1791*i*—5, inclusive. Ch. 186 of the Laws of 1909 repealed the latter sections, renumbered subch. IV and V of ch. 94 of the Statutes, and provided that they should thereafter be designated and known as subch. V and VI, respectively. It then added a new subchapter to ch. 94 of the Statutes to be designated and known as subch. IV, secs. 2024—77*i* to 2024—77*r*, inclusive. This subchapter was entitled "Trust Companies." By the very first section thereof (sec. 2024—77*i*) it was provided as follows:

"Trust company banks may be organized pursuant to the provisions of subchapter II, entitled 'State Banks,' and shall be subject to all the provisions, requirements, and liabilities of subchapters I and II, so far as applicable, except sections 2024—32 and 2024—35, and except as otherwise hereinafter provided."

Could there be a plainer declaration of a legislative intent to bring trust companies under the banking laws and make all of the provisions of subch. I and II of ch. 94 applicable to trust companies, except in certain particulars specifically mentioned? It is an affirmative, broad, sweeping, and inclusive declaration. It makes trust companies subject to all the provisions of subch. I and II of ch. 94, except in certain particulars expressly specified. It conferred upon the commissioner of banking the same authority over trust companies that he exercised with reference to state banks. It provided that trust companies should no longer be incorporated under the provisions of ch. 86 but under the provisions of subch. II of ch. 94. It was the evident purpose of the legislature to place trust companies and banks upon an

equal footing so far as regulations, burdens, and liabilities were concerned. This because they were engaged in a similar and competing business and because the public had a similar interest in the management and solvency of the two institutions.

It is to be noted that prior to the enactment of said ch. 186 of the Laws of 1909 trust companies enjoyed a special form of taxation. By sec. 1222$k$ as well as sec. 1791$i$ it was provided that trust companies on or before the 1st day of March in each year should pay a license fee of $500 and in addition three per centum of its net income during the calendar year preceding in lieu of taxes. Said sections were repealed by said ch. 186, and it was provided by sec. 2024—77$q$ that "the capital stock and property of corporations organized, continued, or reorganized under this subchapter shall after January 1, 1910, be assessed and taxed in the same manner as the stock and property of state banks." These are a few of the inequalities, easily noted, then existing between the rival institutions and which the legislature evidently intended to remove.

Counsel for appellants, however, dwell upon sec. 2024—77$o$. That section provides:

"Any existing trust company heretofore organized under the laws of this state may continue its existence under the provisions of this subchapter by the adoption by unanimous vote of all its stockholders, of a resolution at a duly convened meeting of its stockholders, present in person, or by proxy specifically authorizing such action, accepting the provisions of this chapter and filing a copy of such resolution, with a certificate under the corporate seal, verified by the president and secretary, showing such unanimous vote and the other facts herein required, with the commissioner of banking and secretary of state, at any time on or before February 1, 1910; or may surrender its existing charter and reorganize hereunder in the same manner as state banks are organized, except that no incorporation or filing fee shall be required to be paid for such reincorporation. In

case of continuance or reorganization in either manner afore-said, all powers, trusts, rights and liabilities of any such existing corporation, and the corporate existence of such corporation, shall be deemed continuous and all such powers, trusts, rights, and liabilities shall *ipso facto* vest in and at-tach to such continued or reorganized corporation.    Stock of such continued or reorganized corporation may be sub-stituted for stock in any such existing corporation held in trust or otherwise.''

It will be noted that this section provides two methods by which existing trust companies may come under the act, and then continues:

"In case of continuance or reorganization in either manner aforesaid, all powers, trusts, rights and liabilities of any such existing corporation, and the corporate existence of such corporation, shall be deemed continuous and all such powers, trusts, rights, and liabilities shall *ipso facto* vest in and attach to such continued or reorganized corporation.''

It is contended that this provision secures to the com-panies then in existence a continuance of the statutory rights and liabilities which they enjoyed or to which they were subject prior to the enactment of said ch. 186.   Let us see.

It is plainly apparent that after the enactment of said ch. 186 trust companies were to be organized as specified in sec. 2024—77*i* and that they were to be subject to all of the provisions of subch. I and II of the banking law.   The law under which trust companies then in existence were or-ganized and in operation was repealed by the terms of that chapter.   It was not the purpose of the legislature to compel existing trust companies to wind up their affairs and go out of business.   The legislature therefore provided for their continuance.   It gave each trust company the choice of two methods by which this end might be accomplished: one was a surrender of its charter and a reorganization "hereunder in the same manner as state banks are organized;" the other,

by the adoption of a resolution by the unanimous vote of all its stockholders "accepting the provisions of this chapter and filing a copy of such resolution . . . with the commissioner of banking and secretary of state, at any time on or before February 1, 1910." The effect of either method was the same. Now the question arises, What did the legislature have in mind in providing that in case of continuance and reorganization in either manner aforesaid all powers, trusts, rights, and liabilities of any such existing corporation, and the corporate existence of such corporation, shall be deemed continuous and all such powers, trusts, rights, and liabilities shall *ipso facto* vest in and attach to such continued or reorganized corporation? Was it intended that said ch. 186 was not to affect the statutory rights and liabilities of existing trust companies? If so, then why repeal the statutes under which they were organized? Why not simply provide that all trust companies thereafter organized should be subject to the terms of the act? Was it the purpose of the legislature to create two classes of trust companies, one organized before and the other after the enactment of said ch. 186? It is apparent to our minds that such was not the legislative purpose, but rather that it was the legislative determination to bring trust companies, whenever organized, under the provisions of the banking laws and to subject them to the same regulations, burdens, and liabilities that are imposed upon state banks.

What, then, *was* the purpose in continuing the powers, trusts, rights, and liabilities of existing trust companies? That seems quite plain. Trust companies already in existence had established contractual rights and liabilities. They had received moneys on deposit. They had issued their debentures. They had assumed trust obligations and undertaken the management of trust estates. Was the repeal of the law under which they were incorporated and their reorganization under the new law to affect such con-

tractual rights and liabilities? The legislature foresaw that some legislation was at least appropriate if not necessary to preserve the *status quo* of such contractual rights and liabilities, and for this purpose the provision we are considering was enacted. While said ch. 186 repealed the law under which such companies were organized, it was not intended to destroy the companies or to dissolve contractual rights and liabilities which had been engendered. They might continue their existence, but in order to do so they were required to come under the provisions of the act and subject themselves to the statutory supervision, burdens, and liabilities imposed upon state banks. Their contractual rights and liabilities, however, were to be deemed continuous and immune from any interference by reason of the legislation.

The Citizens Savings & Trust Company came under the act by the adoption of the required resolution by a unanimous vote of its stockholders. They therefore individually and voluntarily assumed the burdens imposed by the act, which included the personal liability imposed by sec. 2024—44, and the judgment appealed from is correct so far as it affects those defendants who were stockholders on the 2d day of October, 1913, or within six months prior thereto.

We reach this conclusion fully conscious that there was no personal liability of stockholders at common law, and that statutes imposing the same, being in derogation of the common law, are strictly construed—a rule strongly relied upon by the appellants. Could we discover any doubt concerning the legislative purpose in this respect, this rule would require consideration, but we do not consider the legislative intent ambiguous, obscure, or doubtful and there is no room for the application of such rule.

The appeal of the executors of W. A. Starke presents the question whether Starke, now deceased, was the owner of stock in said trust company on the 2d day of October, 1923, or six months prior thereto. He acquired ten shares of stock in the company October 28, 1911. Prior to April 11,

1912, he offered to sell it by advertising in a newspaper without disclosing his name. He indorsed in blank a written assignment and power of attorney in the usual form upon the stock certificate and left it with the Merchants & Manufacturers Bank. The certificate was in the possession of the bank until April 11, 1912, when in consideration of $1,000 as purchase price the bank sold and delivered the same to T. J. Pereles, who was then the president of the trust company, with the written assignment still left blank. Nathan Pereles, son of T. J. Pereles, was treasurer of the company and knew that T. J. Pereles had purchased the stock. The stock was never transferred on the books of the company and a demand to that effect was never made by Starke. It would appear that he had assumed that, the stock having been sold to the president of the company, the transfer thereof on the books of the company would naturally follow. Under these circumstances, was he a stockholder of the company October 2, 1913, so as to make him liable in this action?

Sec. 2024—45 provides: "The shares of stock of an incorporated bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the by-laws thereof may direct." This provision was applicable to trust companies at all times since the enactment of ch. 186 of the Laws of 1909. The by-laws of the company provided that "no transfer of stock of said corporation shall affect the right of the corporation to pay any dividend due upon the stock or to treat the holder of record as the holder in fact until such transfer is recorded upon the books of the corporation or a new certificate is issued to the person to whom it has been so transferred." Sec. 2024—45 is very similar to the federal statute relating to the transfer of the capital stock of a national bank (U. S. R. S. sec. 5189), which provides that the capital stock of a national bank shall be transferable on its books in such manner as may be prescribed in its by-laws or articles of association.

In *Whitney v. Butler*, 118 U. S. 655, 7 Sup. Ct. 61, the court had under consideration the transfer of certain stock in a bank the by-laws of which provided that its stock should be assignable only on its books, that a transfer book be kept in which all assignments and transfers of stock should be made, that each certificate should state upon its face that the stock is transferable only upon the books of the bank, and that when a transfer is made the certificate shall be returned and canceled and a new one issued. The syllabus of the case states the holding of the court upon the facts there presented, in the following language:

"A., an owner of shares in the capital stock of a national bank, employed a broker and auctioneer to sell them by public auction. They were bid off by B., who paid the auctioneer for them, and received from him the certificate of stock, with a power of attorney for transfer duly executed in blank. The auctioneer paid the purchase money to A. B. was employed by the president of the bank to make this purchase for a customer of the bank, who had made a deposit in the bank for the purpose, and he delivered the certificate and the power of attorney to the president, and received from the bank the money for the purchase. No formal transfer of the stock was made on the transfer book of the bank. Shortly afterwards the bank became insolvent, and eventually went into the hands of a receiver, who made an assessment on the stockholders under the provisions of the Revised Statutes, sec. 5205, to make up the deficiency in the capital. Until after the stoppage A. had no knowledge as to the purchaser, or as to the neglect to formally transfer the stock, and no reason to suppose that the transfer had not been made. In an action against A., by the receiver, to recover the amount of the assessment upon his said stock, held, that the responsibility of A. ceased upon the surrender of the certificates to the bank, and the delivery to its president of a power of attorney sufficient to effect, and intended to effect, as the president knew, a transfer of the stock on the books of the bank."

In *Matteson v. Dent*, 176 U. S. 521, 20 Sup. Ct. 419, the

general rule with reference to the transfer of stock of national banks was stated as follows:

"As a general rule, the legal owner of stock in a national banking association—that is, the one in whose name stock stands on the books of the association—remains liable for an assessment so long as the stock is allowed to stand in his name on the books, and, consequently, although the registered owner may have made a transfer to another person, unless it has been accompanied by a transfer on the books of registry of the association, such registered owner remains liable for contributions in case of the insolvency of the bank."

This case, however, recognizes certain exceptions to this general rule, one of which was stated in this language:

"That where a transfer of stock is made and delivered to officers of a bank, and such officials fail to make entry of it, those acts will operate a transfer on the books, and extinguish the liability, as stockholder, of the transferrer."

The case of *Whitney v. Butler, supra,* was cited as authority for the exception. The exception is also recognized in *Earle v. Carson,* 188 U. S. 42, 23 Sup. Ct. 254, and *Apsey v. Kimball,* 221 U. S. 514, 31 Sup. Ct. 695, and seems to be firmly established in that court. The basis for the conclusion announced in the initial case of *Whitney v. Butler, supra,* is that when the stockholder sells his stock to the president or other officer of the corporation properly indorsed in blank with power of attorney to fill in the purchaser, the officer of the corporation receives it with knowledge that the stockholder has parted with his title and that, under such circumstances, he has done all that he can do in order to accomplish a transfer on the books of the company; that thereupon it becomes his statutory right to have his stock so transferred, and it becomes the statutory duty of the officers of the company to accomplish such transfer upon the books of the company, and in the absence of any notice that the officers of the company have failed in

the performance of such duty or a knowledge of facts which may be reasonably said to raise a question as to their performance of such duty or of their intention to perform such duty, he may rely upon the presumption that the stock will be so transferred upon the books of the corporation. We think this is a just and reasonable rule and is ·in harmony with the natural, ordinary conduct of mankind. It should be presumed that when the president of a corporation purchases stock of the corporation paying therefor its full par value, he does so because he attaches value to the stock, and that he, being the executive officer of the corporation, will see that the stock is properly transferred upon the books of the corporation, and that this may be relied upon by the seller in the absence of knowledge which should reasonably raise a doubt in such respect.

Certainly there is scant justice in holding the Starke estate liable in this action. In relying upon the assumption that the president of the company, who had purchased the stock paying therefor its full market value, who had received the stock knowing that its title had passed from Starke and had become vested in himself, would see to it that the corporation would perform the statutory duty necessary to fully divest Starke of, and vest himself with, title thereto, he but conformed to the ordinary and usual conduct of men, and it should be held that under the circumstances he did all that the law required him to do in order to fully divest himself of title to the stock and relieve himself of the consequent personal liability of a stockholder.

*By the Court.*—Upon the appeal of the executors of the estate of T. A. Starke, deceased, the judgment is reversed, and cause remanded with directions to dismiss the complaint as to such executors. Upon the appeal of the other appellants the judgment is affirmed.