SCHWENKER, as State Commissioner of Banking, Appellant, vs. THOMPSON, Respondent.

*February 6—March 5, 1929.*

For the appellant there was a brief by the *Attorney General* and *T. L. McIntosh,* assistant attorney general, of

counsel, and a separate brief by *Dean & Dean* of Glenwood City; and the cause was argued orally by *H. H. Dean.*

*Roy P. Wilcox* of Eau Claire, for the respondent.

The following opinion was filed March 5, 1929:

ROSENBERRY, J.   A number of propositions were argued here in briefs and upon the oral argument which in the view we take of the case it will not be necessary for us to discuss or consider although they were properly argued and presented.   Sec. 221.42 provides:

"Such liability [double liability] shall continue for six months after any transfer of stock, as to the affairs of the bank at the time and prior to the date of the transfer."

Sec. 221.43 provides:

"The shares of stock of an incorporated bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the by-laws thereof may direct, and no transfer of stock shall be valid while the bank is under notice to make good the impairment of its capital, as provided in section 220.07, nor until such impairment shall have been made good."

It appears that one P. Hovden was cashier of the bank and the defendant undertook to sell and dispose of his stock to the said Hovden.   The stock was duly transferred to Hovden by indorsing the certificates and delivering them to Hovden more than six months prior to the time when the banking commissioner took possession of the bank.   In payment for the $2,000 stock Hovden gave his note for $500 to the defendant and was to pay the outstanding assessment.

Conceding that the transfer was in good faith and although the stock had not in fact been surrendered and a new certificate issued but nevertheless the transaction was complete under the rule laid down in *Cousins v. Flertzheim,* 182 Wis. 275, 196 N. W. 250, we come to the more serious

question of whether or not the impairment of the bank's capital had been made good so as to make the shares transferable under the provisions of sec. 221.43. There are two phases to that question, one relating to the stock of a stockholder by the name of Joseph Day, who owned ten shares of the nominal or par value of $1,000. It appears that on August 24, 1926, the directors of the bank levied an assessment under the provisions of sec. 220.07, the defendant refused to pay the assessment, and out of his refusal grew the attempt of the cashier, Hovden, to acquire the stock because he did not wish it sold pursuant to the provisions of that section. As to the stock of Mr. Day the court found:

"That the assessment of one Joseph Day, who owned ten shares of stock in said bank on August 24, 1926, was paid by a charge of $1,000 against his savings account which was credited to the capital stock account by P. Hovden on October 16, 1926, without any express authority from said Joseph Day to make such charge. That said Joseph Day did not learn of said charge until a day or two after July 5, 1927. That after learning of said charge, so made for the purpose of paying his portion of said assessment, he took no action with reference thereto until some time in September, 1927, when he filed a claim in the receivership proceedings at the suggestion of the plaintiff, for the full amount shown to his credit on his pass-book on October 16, 1926, to wit, $1,469.60."

It appears from the testimony of Day, who was a witness upon the trial, that he had no knowledge or notice of the making of the assessment of August, 1926, until after the commissioner took over the bank, and, as found by the court, he never authorized the cashier to charge his account with the amount of the assessment.

The defendant makes the following claims respecting this transaction: (1st) that the Wheeler State Bank was authorized to charge its depositors any sum due and owing to it, under the general rule that a bank may charge against an

account of its depositor overdrafts, past-due notes, and other similar obligations; (2d) that in this case the charge was authorized by the contract between the bank and Day as found in his deposit book under the title "Rules governing deposits in the Savings Department of the Wheeler State Bank, Wheeler, Wisconsin." By rule 16 it is provided:

"It [the bank] reserves to itself the right to deduct from deposits credited in this book any counterclaims which it may hold against the original depositor or the owner of the book."

(3d) That Day's failure more promptly to repudiate the transaction amounted to an acceptance of it on his part or at least to an affirmance or ratification of the act of the cashier. If the liability of Day under sec. 220.07 is that of a debtor to a creditor, defendant's contention would undoubtedly be sound. The provisions of that section, which are set out in the margin, are peculiar.[1]

---

[1] "Section 220.07. Whenever the commissioner of banking shall become satisfied that the capital of any bank is impaired or reduced below the amount required by law or the articles of incorporation, or below the amount certified to the commissioner of banking as paid in, he shall have the power to require such bank under his hand and seal of office to make good such impairment or deficiency within sixty days after the date of such requisition. In any case, where the capital of a bank shall have become impaired or reduced below the amount required by law or the articles of incorporation, the board of directors of such bank shall have the power to make a *pro rata* assessment upon all of the stock of said bank to make good such deficiency, and may provide that the amount of such deficiency shall be due and payable at a time to be fixed by such board of directors, which time shall be not less than ten days after notice of said assessment; provided, that notice to stockholders residing in another state shall be given by registered mail and a return receipt demanded. If any stockholder shall fail or neglect to pay the amount of the assessment against his stock for ten days after the same shall have become so due and payable, the directors of such bank may offer said stock for sale, and sell the same at public sale upon ten days' notice to be given by posting copies of such notice of sale in five public places in the town, village or city where such bank is located. Upon such sale, the purchaser shall forthwith pay the amount of the assessment against said stock. The amount received from the sale of said stock, less the cost and expenses of such sale, shall be paid to the original owner of such stock."

The provision that a failure to pay shall subject the stock of the stockholder to sale and that upon such sale "the purchaser shall forthwith pay the amount of the assessment against said stock," quite clearly indicates that it was not the legislative intent and purpose to subject a stockholder to personal liability on account of an assessment made under this section. What happens when there are no bidders at the sale the statute does not disclose. If, however, under the provisions of sec. 220.07 a stockholder becomes personally liable for an assessment made by the directors and the proceeds of that assessment are not sufficient to save the bank, he individually becomes subject to an assessment when the bank passes into the hands of the banking commissioner under the provisions of sec. 221.42. So interpreted the banking law would make a stockholder liable, including his investment, for three times the par value of his stock. We discover no provision of the statute upon which such a conclusion as that can rest.

We had occasion to consider this statute in *Bank of Prentice v. Beyer,* 189 Wis. 253, 207 N. W. 144, and this court there held upon the authority of *Finney v. Guy,* 106 Wis. 256, 82 N. W. 595, decided nearly thirty years ago, that the liability under this section of the statute was not personal and that the sole liability of the stockholder was that of having his stock sold away from him. It is not a question of remedy, but a question of the nature of the stockholder's liability.

While it is true that *Finney v. Guy, supra,* does not deal with the precise question dealt with here, the principles discussed and laid down in that case are controlling in cases of this class and have been generally so regarded. No change in the statute has ever been sought and we feel obliged to adhere to our prior decision. Such being the case, there was no liability of the stockholder, Day, upon which the defunct bank could have brought an action. The relation of creditor

and debtor did not exist, and neither Hovden, its cashier, nor the bank had the right to sequester Day's deposit in liquidation of his liability under the statute. So that at the time and at all times up to the time of the failure of the bank and its being taken over by the banking commissioner, the impairment of the capital stock had not been made good as required by sec. 221.43 and the defendant could not have transferred his shares of stock to the cashier, Hovden, free from liability prior to the 5th day of July, when the rights of the parties became fixed. There is no claim that any other procedure was taken. The claim of estoppel or ratification cannot be sustained. Whatever, if anything, was done in that regard was done after the failure and could not affect the transferability of defendant's stock in December prior thereto. It is considered, therefore, that such transfer as was made by the defendant Thompson was ineffectual to relieve him from liability for the assessment made by the commissioner of banking under sec. 221.42.

The conclusion we have reached upon this branch of the case makes it unnecessary for us to consider and determine whether or not the other assessments were paid, questions involved in much doubt and uncertainty.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to enter judgment for the plaintiff as prayed in the complaint.

The following opinion was filed April 30, 1929:

### On rehearing.

PER CURIAM. The defendant upon this motion complains because all of the questions argued in the case were not disposed of in the opinion, and to some extent it may be said that this complaint is justified. We are again urged to hold that under the rule laid down in *Cousins v. Flertzheim,* 182

Wis. 275, 196 N. W. 250, the plaintiff is estopped to question the validity of the transaction by which the defendant Thompson transferred his stock to Hovden. Were there no other question involved than the legal effect of that transaction the argument would have weight, as was pointed out in the original opinion.

Sec. 221.43, referred to but not quoted, provides:

"No transfer of stock shall be valid while the bank is under notice to make good the impairment of its capital, as provided in section 220.07, nor until such impairment shall have been made good."

The court was of the view that having held that the impairment of the capital had not been made good, no valid transfer of the stock could be made however complete the transaction; that as to the statute, no stockholder could rely as against creditors upon statements made by the officers of the bank to the effect that such impairment had been made good. The statute would be of little value if it might be in effect set aside or held inapplicable because of statements made by corrupt and designing officers.

Motion for rehearing denied, without costs.