In re Plain State Bank : Reuschlein and others, Appellants, vs. Meier, Special Deputy Banking Commissioner, and another, Respondents.

*January 8—February 5, 1935.*

*Robert H. Gollmar* of Baraboo, for the appellants.

For the respondents there was a brief by *Evenson & Shiels* of Baraboo, and oral argument by *W. G. Evenson*.

MARTIN, J.   It is claimed by the appellants that the court erred in refusing to order the liquidating dividend paid to stockholders who were also depositors and in refusing to order the stockholders' assessment account credited on the statutory assessment.   No question is raised as to the validity of either the statutory or the voluntary assessment.   It is claimed on the part of the appellants that, under the circumstances of this case, the sums collected on the voluntary assessment remained the property of the stockholders so paying said voluntary assessment and should be applied to their credit on the statutory assessment.   The statute, sec. 220.07 (1), under which the voluntary assessment was levied, provides, in part, as follows:

"Whenever the commissioner of banking shall become satisfied that the capital of any bank is impaired . . . he shall have the power to require such bank . . . to make good such impairment . . . within sixty days. . . . In any case, where the capital of a bank shall have become impaired . . . the board of directors of such bank shall have the power to make a *pro rata* assessment upon all of the stock of said bank to make good such deficiency. . . . If any stockholder

shall fail . . . to pay the amount of the assessment . . . the directors . . . may offer said stock for sale, and sell the same at public sale. . . . Upon such sale, the purchaser shall forthwith pay the amount of the assessment against said stock. The amount received from the sale of said stock, . . . shall be paid to the original owner of such stock."

The voluntary assessment of thirty-nine per cent levied on the stock in 1931 and the further voluntary assessment of one hundred per cent levied on the stock in April, 1932, and paid by appellants, were both made under the provisions of the above quoted statute. The voluntary assessment made under the statute is against the stock, not the stockholder. There was no personal liability for these assessments on the part of the holders of the certificates of stock. *Schwenker v. Thompson,* 198 Wis. 306, 311, 223 N. W. 858, 225 N. W. 208. If the assessment is not paid, the stock may be sold in the manner provided by statute. The voluntary assessment provides a method of restoring the impaired capital structure. The assessment, when paid, becomes a part of the capital assets of the bank and thereby increases the value of the stock. No stockholder could be compelled to pay the assessment if he chose to forfeit his stock. This court, speaking of a voluntary assessment under sec. 220.07 in the case of *Hanna v. Curtiss State Bank,* 204 Wis. 174, 176, 235 N. W. 416, in an opinion by the late Justice OWEN, said:

"The entire proceeding was one for the benefit of the bank. The statutory provisions authorizing it are intended to enable the bank to repair its capital. It is a procedure established to promote the solvency of banks—a consummation plainly in the public interest. It is a procedure inimicable to the interests of stockholders. It is a procedure which results in additional burdens to the stockholders, or strips them of their title to their stock."

The depositors and creditors as such had no voice in making the assessment. With the capital impairment removed, had the bank succeeded, the stockholders might have saved

their original stock investment.   The only authority which the Banking Commission possessed was to close the bank unless the capital impairment was made good.

In December, 1932, the bank closed and was taken over by the Banking Commission.   In January, 1933, a statutory assessment was levied on the stockholders under sec. 221.42, Stats., which provides, in part, as follows:

"The stockholders of every bank shall be individually liable . . . for the benefit of creditors of said bank to the amount of their stock at the par value thereof, in addition to the amount invested in said stock. . . . Such liability shall accrue and become due . . . upon the commissioner of banking taking possession of the property and business of such bank."

The assessment under the above statute is compulsory. The liability of the stockholder accrues and becomes due upon the Banking Commission taking possession of the property and business of the bank.   It is personal as to the stockholder, for which personal liability attaches and is for the benefit of the depositors and creditors.   This statutory assessment is mandatory upon the Banking Commission taking possession of the property and business of the bank, regardless of the levy and payment of the voluntary assessment.   3 R. C. L. p. 398; *Andrew v. Farmers' Trust & Savings Bank,* 204 Iowa, 243, 213 N. W. 925, 928; *Smith v. Goldsmith,* 49 S. D. 580, 207 N. W. 978.

The claim that the representations of the representative of the Banking Commission should be regarded as affecting the result is considered to be without merit.   The intent of the two statutes (sec. 220.07 (1) and sec. 221.42) is clear and definite.   The latter statute is, by its terms, for the specific benefit of the creditors of the bank.   The payment of the voluntary assessment is primarily for the stockholders' benefit.   Any statement or representation made by the representative of the Banking Commission to the effect that the assessment of one hundred per cent made by the directors

of the bank in May, 1932, would be credited upon the liability of the stockholders in the event of a statutory assessment was merely such individual's personal opinion on a point of law, and could not release appellants from their personal liability. In *Schwenker v. Thompson,* 198 Wis. 306, 313, 223 N. W. 858, 225 N. W. 208, this court held that, as to sec. 221.43, Stats., a bank stockholder cannot rely as against creditors upon statements made by the bank officers that an impairment of the capital of the bank had been made good. In *Schlecht v. Anderson,* 202 Wis. 305, 232 N. W. 566, 569, it was represented to stockholders of an insolvent bank that they were personally liable to the depositors and creditors of the bank, and on the strength of such representations, the stockholders signed guaranties. Action was brought on the guaranty agreement, and it was defended on account of the false statements and fraud. The court held:

" . . . The misrepresentation was one purely of law. . . . While, under some circumstances a misrepresentation of law may constitute actionable fraud, such is not the general rule. . . . "

In 12 R. C. L. p. 295, § 59, it is stated:

"As a general rule fraud cannot be predicated upon misrepresentations as to matters of law, nor upon opinions on questions of law based on facts known to both parties alike, nor upon representations as to what the law will not permit to be done. . . ."

It is immaterial how the bank entered the proceeds of the voluntary assessment upon its books. In making the entries the bank was not representing the creditors of the bank, and no act of its officers in the methods of its bookkeeping could possibly affect the positive rights given to the creditors of the bank under the statutes.

*By the Court.*—Order affirmed.