Estate of White: Boedecker and others, Respondents, vs. Marine National Exchange Bank of Milwaukee and others, Appellants.

*November 12—December 8, 1936.*

For the appellants there were briefs by *Churchill, Bennett, Churchill & Davis,* attorneys, and *Jos. E. Rapkin* of counsel, and oral argument by *Mr. Rapkin, Mr. William H. Churchill,* and *Mr. Patrick W. Dean,* guardian *ad litem,* all of Milwaukee.

For the respondents there was a brief by *James H. McGowan* of Algoma and *Hayes & Hayes* of Milwaukee, attorneys, and *William A. Hayes* of Milwaukee of counsel, and oral argument by *William A. Hayes.*

NELSON, J. There is no dispute in the facts adduced. So many of them as are necessary to an understanding of this controversy will be stated. In 1933, there were two banks in the city of Algoma, namely, Citizens Bank and Bank of Algoma. Both banks were experiencing financial difficulties as a result of the depression. Patrick M. White was the owner of seventy-four shares of stock in Citizens Bank. During the summer of 1933, it was deemed advisable by the Wisconsin banking commission, hereafter called the commission, to take steps to stabilize both banks and ultimately consolidate them. We shall advert principally to the steps taken by Citizens Bank and its stockholders. On August 1, 1933, the board of directors of Citizens Bank, at a special meeting, held at the suggestion of the commission, and pur-

suant to the provisions of sec. 220.07 (1), Stats., passed a resolution which levied an assessment of $100 upon each share of the capital stock of Citizens Bank, payable August 1, 1934, or upon the call of the commission. In order to carry out the purposes of the resolution adopted by the board of directors, an agreement was prepared by the commission for execution by the stockholders. By the terms of that agreement, each stockholder who signed it consented to the assessment as levied and agreed to pay the amount set opposite his name, at or before the date fixed in the resolution or on such earlier date as might be fixed by the commission. Each stockholder also agreed "that in the event the amount due on said voluntary assessment on the respective shares owned by the undersigned shall remain unpaid for a period of ten days after the due date fixed in said levy or such earlier due date as may be fixed by the banking commission and the banking review board, we [I] hereby agree to sell, assign, convey and transfer our [my] right, title and interest in said stock to the trustees for the agreed purchase price of one dollar ($1) per share, without release of any present statutory liability, and we [I] hereby waive all further notice required by statute relative to forfeiture of stock for nonpayment of said voluntary assessment;" that he would not make any transfer of his stock until the assessment had been paid in full or until otherwise released by proper authority; and that the substance of the agreement created a liability which should remain as a continuing liability binding upon him and his heirs until such time as it should be paid in full or otherwise released by proper authority. The name "P. M. White" subscribed to one of the agreements is not the signature of the deceased. His name, however, was signed by his secretary, Miss Overbeck, in his presence and the presence of Mrs. White and Mr. Boedecker, one of the plaintiffs, who at that time was a stockholder in

and cashier of Citizens Bank. On November 14, 1933, a joint meeting of the boards of directors of Citizens Bank and Bank of Algoma was held, at which time it was, among other things, resolved that the two banks consolidate and, pursuant to such resolution, a consolidation agreement was entered into. By November 23, 1933, a sufficient number of the stockholders of Citizens Bank, including Patrick M. White, had consented to the consolidation. The consolidation was thereafter approved by the commission. On December 12, 1933, a trust agreement was entered into between Citizens Bank and the plaintiffs as trustees, which was to become effective when depositors and unsecured creditors, representing more than eighty per cent of the deposit liability and unsecured credits of the bank, had executed depositors' agreements. By the trust agreement the bank agreed to convey, assign, and set over to the trustees certain assets listed in Exhibit A. Exhibit A, however, was not produced at the trial, so what assets were listed therein does not appear. From the agreement it reasonably appears that the good assets retained by the bank were sufficient to equal the capital stock and that portion of the claims of depositors and unsecured creditors which were not frozen but remained as claims against the bank. The agreement, among other things, provided:

"1. The bank hereby agrees that as rapidly as payments on the voluntary assessment are received by the bank, it will assign good assets of an equal value to the trustees for the benefit of the persons entitled thereto."

On October 31, 1935, pursuant to the provisions of sec. 220.07 (20), Stats., the commission declared the statutory liability of holders of stock of Citizens Bank under sec. 221.42, to be due and payable. The claim made by the trustees is grounded on the agreement dated August 1, 1933, signed on behalf of the deceased by his secretary. The time

for filing claims expired on the first Tuesday of October, 1934. On September 25, 1935, L. W. Buege, was substituted as trustee in the place of Mr. Boedecker. On September 20, 1935, after the time for filing claims had expired, and over the objection of the executors, the court permitted Community State Bank (the consolidated bank), to be made a party plaintiff.

The court adjudged, (1) that the plaintiffs recover of the deceased the sum of $7,400, and that said sum be paid by the executors out of the estate; and (2) "that for the protection of the executors of deceased's estate the said executors shall be entitled to demand and receive at the time of making such payment and as a condition thereof, release, or releases, executed to them by the claimants, the banking commission of Wisconsin, the said special deputy banking commissioner, and the said Community State Bank of Algoma, Wisconsin, fully releasing and discharging them as such executors of and from any other or further assessment or assessments which have been or may be charged or levied upon the capital stock of said Citizens Bank held by Patrick M. White, deceased, at his death."

The executors contend, (1) that the evidence adduced was insufficient to prove that the deceased authorized the signing of his name to the agreement upon which the claim is based, even assuming that Mr. Boedecker was a competent witness to that transaction, which they strenuously deny; (2) that, even assuming that the deceased became bound by Miss Overbeck's signing his name to the agreement, the agreement was not entered into with the plaintiffs nor did the deceased agree to pay them; (3) that the agreement of August 1, 1933, imposed no personal liability upon Mr. White in the event he failed to pay the assessment; and (4) that any cause of action that Citizens Bank may have had under the agreement of August 1, 1933, has never been assigned to the plaintiffs as trustees of the segregated trust and that they wholly failed

to prove that they, as trustees, were the owners of or had the right to collect the voluntary assessment in question.

In our opinion, it is unnecessary to determine, (1) whether Mr. Boedecker was competent to testify to the circumstances attending the signing of the agreement by Miss Overbeck, or (2) whether the testimony adduced was insufficient to show that Miss Overbeck signed the agreement at the request and direction of the deceased, because of the disposition that must be made of this action on other grounds.

The agreement was entered into for the purpose of carrying out the resolution of the board of directors of even date therewith, which referred to and was drawn pursuant to the provisions of sec. 220.07 (1), Stats., which relates to voluntary assessments levied by a board of directors of a bank. It was held in *Bank of Prentice v. Beyer,* 189 Wis. 253, 207 N. W. 144, and *Schwenker v. Thompson,* 198 Wis. 306, 223 N. W. 858, 225 N. W. 208, each of which cases was an action to recover from a stockholder the amount of an assessment levied by the board of directors of a bank, pursuant to the provisions of sec. 220.07 (1) that the exclusive remedy of the bank upon the failure of a stockholder to pay such an assessment was to sell his stock. In *Schwenker v. Thompson, supra,* it was held that the failure of a stockholder to pay an assessment levied pursuant to the provisions of sec. 220.07 (1) did not subject him to a personal liability. The agreement of August 1, 1933, is not so different from the statute as to justify the imposition of a personal liability upon those who executed it. While the agreement provided that the signers consented to the levy of the voluntary assessment theretofore levied by the board of directors and promised that they would pay the amounts set opposite their respective names, on or before the due date as fixed in the resolution or such earlier due date as might be fixed by the commission, the agreement further provided that in the event the voluntary assessment should remain unpaid for a

period of ten days after the due date fixed in said levy or such earlier due date as might be fixed by the banking commission and the banking review board, the signer would sell, etc., his interest in his stock to the trustees for the agreed price of $1 per share. In our opinion, a reasonable construction of the agreement impels the conclusion that the liability imposed upon the stockholders who executed it was no greater than that imposed by the statute, sec. 220.07 (1). Its obvious purpose was to do away with the necessity of the giving of notice, conducting a sale of the stock, etc., as provided by law. No personal liability founded upon the failure of any stockholder to pay the assessment resulted. The remedy that was given to the bank upon failure of a stockholder to pay the assessment was to enforce the right to compel him to sell his stock at the stipulated price.

The contention of the executors that any cause of action that the bank may have had under the agreement was not shown to have been assigned to the plaintiffs as trustees of the segregated trust is, in our opinion, sound. The trust agreement entered into by and between Citizens Bank and the plaintiffs as trustees for the purpose of carrying out the stabilization plan provided, so far as is here material, as follows:

"Whereas, the board of directors of said bank levied a voluntary assessment on all of the capital stock of said bank equal to one hundred per cent of the par value of such stock, and . . .

"Whereas, the portion of depositors' claims to be assigned to said trustees is sufficiently large to make present necessary repairs to the capital of said bank and to set up a contingent fund to cover the expense of stabilization and other contingent expenses;

"Now, therefore, in consideration of the premises, it is agreed between the bank and the trustees as follows:

"1. The bank hereby agrees that as rapidly as payments on the voluntary assessment are received by the bank, it will

assign good assets of an equal value to the trustees for the benefit of the persons entitled thereto.

"2. The bank further agrees that upon the execution of this agreement, and the prior or subsequent execution and acceptance of depositors' agreements in the manner, form and amount hereinafter provided, it will convey, assign and set over to the trustees the assets of said bank which are listed in Exhibit A, hereunto attached, which is hereby referred to and made a part hereof."

As heretofore stated, Exhibit A was not produced, so what it contained is nothing but speculation. The failure to produce Exhibit A, coupled with the specific provision hereinbefore recited whereby the bank agreed, as rapidly as payments on the voluntary assessment were received by it, to assign good assets of equal value to the trustees for the benefit of the persons entitled thereto, clearly shows that the bank did not intend to assign to the trustees its right to the voluntary assessments or the right to collect them from stockholders. There is nothing in the agreement between the bank and the trustees which militates against the conclusion reached. In *Johnson v. Vickers,* 139 Wis. 145, 120 N. W. 837, it was held that where the plaintiff's right to recover depends on an assignment, it is "incumbent upon the plaintiffs to prove a valid assignment in order to show that they had a cause of action." Numerous cases to the same effect might be cited were the rule at all doubtful.

As recited in the statement of facts, the court, over the objection of the executors and long after the time for filing claims had expired, permitted the Community State Bank to be made a party plaintiff. Making the bank a party plaintiff was probably considered by the plaintiffs' attorneys as desirable since the plaintiffs' right to make the claim was so dubious. Although both the consolidated bank and the trustees of the segregated trust were working in harmony to rehabilitate the bank, the bank and the trustees were separate entities

(as is now recognized by law. Sec. 220.08 (19) (d), Stats.). The court, in our opinion, improperly amended the plaintiffs' claim by making the bank a party claimant or plaintiff, since the time for filing claims had expired. In *Estate of Leu,* 172 Wis. 530, 179 N. W. 796, it was said:

"It is apparent that the claim filed January 5, 1920, could not be thus amended so as to make a valid claim of it, nor to save the claim filed May 10th from the bar of the statute of limitations."

It is our opinion, (1) that the plaintiffs failed to make out a case of personal liability against the deceased, and (2) that because of their failure to show an assignment of the cause of action to them they were not in any event entitled to recover.

*By the Court.*—Judgment reversed, and cause remanded with directions to disallow the claim.