BANKING COMMISSION, Respondent, vs. WIEMANN, Appellant, and fifteen other cases.

*December 9, 1936—January 12, 1937.*

The cause was submitted for the appellants on the brief of *Buchen & Federer* of Sheboygan, and for the respondent on that of *Edward H. Clemens* of Sheboygan.

WICKHEM, J.   On September 26, 1932, the State Bank of Sheboygan Falls was a banking corporation with a capital of $25,000, divided into two hundred fifty shares of $100 each.   On that date the bank was in financial difficulties, and its capital was seriously impaired.   It had been in this condition for some time.   On September 19th, upon the recommendation of the Banking Commissioner of Wisconsin, and pursuant to a resolution by the bank directors, the mayor of Sheboygan Falls declared a legal holiday in the city, and requested that all places of business be closed from September 19th to September 29th.   Thereupon, the bank closed and proceeded to work out stabilization plans for adoption.   On September 26th, the directors adopted a stabilization plan and levied a one hundred per cent assessment on stock to be paid before November 25, 1932.   It was directed that all stock on which the assessment was not paid be sold as provided in

496

sec. 220.07. From this date on, the operations of the bank under the stabilization plan were under the direction of the commissioner, and the plan itself was approved by him. Upon the same date an agreement signed by the owners of two hundred forty-one of the two hundred fifty shares was executed assenting to the assessment. At or about the same time, persons representing more than eighty per cent of the amount of deposits and unsecured creditors entered into an agreement to accept the stabilization plan. All of the stockholders paid this assessment except one Hilleman, who owned one hundred sixty-eight shares, and one Drossel, owner of two shares. The bank did not offer for sale the Hilleman and Drossel stock, but acted upon the suggestion of the deputy commissioner of banking that Hilleman sign the agreement and try to raise money to pay the assessment, and, if he was unsuccessful, effort be made to dispose of his stock to persons who would pay the assessment. In accordance with this scheme, one hundred fifty-three of Hilleman's shares were disposed of, and the purchasers of these shares paid the assessments. Hilleman never assigned his stock to those who paid the assessments, nor did he surrender the stock to the bank, it having been placed with outside banks as collateral for loans. Upon his failure to meet the assessment, his stock was simply canceled and new certificates issued to those who had paid the assessments. The bank reopened on September 26, 1932, and continued in business under the stabilization agreement until November 10, 1933, when the commissioner of banking took possession. On November 17, 1933, the commissioner made demand upon each defendant to pay his statutory assessment. None of the defendants responded to this demand. Nine of the defendants were stockholders prior to September 26, 1932, and seven had become stockholders after that date by paying assessments on the Hilleman stock. Three of these seven defendants have not surrendered their stock, so far as the record discloses. The other nine surrendered their stock on November 24, 1933.

This case involves a consideration of sec. 220.07 (20), Stats. 1933. This subsection provides as follows :

"Whenever a stabilization and readjustment agreement entered into between any bank and the depositors and unsecured creditors of such bank has been ·approved by the commissioner of banking, the double liability provided by section 221.42 shall forthwith become due and the payment thereof by the stockholders of such bank shall be enforced by the commissioner of banking in the manner provided by said section 221.42 or in some other manner as he may deem advisable. All proceeds therefrom shall be for the benefit of the depositors and unsecured creditors existing at the time of the approval of such stabilization and readjustment agreement by the commissioner of banking. Any stockholder who has fully paid a voluntary assessment levied against him under any such agreement shall, upon the unconditional surrender of his stock to said bank, be relieved from all further liability thereon. Whenever an assessment levied against any stockholder under such agreement has been fully paid, such stockholder shall not be subject to any further or additional assessment for one year after the date of such payment."

This subsection was enacted by ch. 17, Laws of 1933, and became effective February 28, 1933. This was subsequent both to the levy and payment of the voluntary assessment of September 26, 1932. Defendants' claims are, (1) that this subsection should be construed to have retrospective effect; (2) that, if so construed, it is not unconstitutional as an interference with the contract rights and the vested rights of depositors and unsecured creditors; (3) that, assuming the retroactivity and constitutionality of this section, the surrender of this stock was timely, and that upon such surrender defendants were entitled to be relieved from all further liability for assessment; and (4) that, irrespective of surrender, those who paid under the stabilization assessment had no liability to a further assessment for a period of one year.

In the view the court takes of this case, only the first of defendants' contentions need be considered. The background and purpose of this legislation is elaborately covered in *Corst-*

*vet v. Bank of Deerfield,* 220 Wis. 209, 263 N. W. 687. It will not be necessary to repeat what was there said. Sec. 220.07 (20) corrects an obvious defect in the pre-existing law. Sec. 221.42, creating the so-called "double liability," provides:

"Such liability shall accrue and become due and payable as to the stockholders of any bank forthwith upon the commissioner of banking taking possession of the property and business of such bank under the provisions of the statutes. . . ."

Until the passage of sec. 220.07 (20), Stats. 1933, the taking of possession by the commissioner was the only event which caused this liability to accrue. This made it difficult effectively to stabilize banks without interfering with their operation by officers and directors. It was also a fact, (1) that in the banking emergency of 1932 and 1933, the commissioner could not possibly take possession of all of the banks that required stabilization; and (2) that to permit him to do so would further undermine public confidence and tend to make the crisis more acute. Sec. 220.07 (20) met this difficulty by providing that the liability should accrue upon execution and approval of a stabilization agreement, and that any stockholder who "has fully paid a voluntary assessment levied against him under any" stabilization agreement shall "upon the unconditional surrender of his stock to said bank, be relieved from all further liability thereon."

The question is whether this clause was meant to apply to stockholders who prior to the enactment of sec. 220.07 (20) had responded to a so-called "voluntary" assessment under a stabilization agreement, or whether the act is purely prospective in character.

It is our conclusion that the act is not retroactive, but that it operates merely for the benefit of such stockholders whose double liability is made to accrue upon the execution and approval of a stabilization agreement. As to those stockholders, the statute creates an added burden. Up to the time of its

enactment, they were liable for an involuntary double liability assessment only when and if the banking commissioner took possession of the bank. Their liability from and after the enactment of sec. 220.07 (20) was to mature immediately upon the execution of a stabilization agreement. It is obvious that very few stabilization agreements would include a voluntary assessment if the execution of the agreement would cause to accrue the statutory double liability. Such voluntary assessments being an important aid to easy and expeditious stabilization, it was deemed necessary to protect stockholders who responded to a voluntary assessment by permitting them to surrender their stock and avoid further liability. As to those who had entered stabilization agreements prior to the act, it is clear that the statute was not intended to apply. There is no evidence of a legislative intent to make the exemption in sec. 220.07 (20) more extensive or applicable than the burden created by the section. The legislative purpose of the section is sufficiently evident to make it unnecessary to discuss any constitutional question that assumes its retrospective operation. It is enough to point out that it is seriously to be questioned whether the legislature could validly base the accrual of the statutory double liability upon events happening prior to the enactment of the law. In view of this conclusion, the doctrine of *In re Security Savings Bank,* 217 Wis. 507, 259 N. W. 426, and *In re Plain State Bank,* 217 Wis. 257, 258 N. W. 783, applies. In these cases it was held that the statutory voluntary assessment is for the benefit of the bank and the stockholder, and that the stockholder responding to it is not entitled to credit against a subsequent statutory assessment upon his stock.

*By the Court.*—Judgments affirmed.