TRADE PRESS PUBLISHING COMPANY and others, Respondents, vs. MILWAUKEE TYPOGRAPHICAL UNION No. 23 and others, Appellants. [Two appeals.]

*March 7—May 1, 1923.*

*Trade unions: Injunction against carrying out alleged conspiracy of union: Parties: Employers having common interest: Complaint: Sufficiency: Pleading: Demand for unwarranted relief: Contract among employers to maintain open shop: Construction: Validity.*

1. In an equitable proceeding to enjoin the members of a typographical union from further carrying out an alleged conspiracy to force plaintiffs, who were employing printers, to enter into agreements with the defendant union to conduct a closed shop, which conspiracy was aimed at a class of persons rather than at individuals, the subject of the action presents a question of common and general interest and is a situation under secs. 2602 and 2604, Stats., where one or more of the class might sue for their own benefit or for the benefit of others similarly interested.

2. Nothing being pleaded showing a state of facts which might indicate that the action was at law for damages, and the prayer for relief asking damages being no substantive part of the complaint, the objection that plaintiffs ask more relief than the pleaded facts entitle them to cannot be reached by demurrer.

3. Under sec. 2666, Stats., providing that, if there be several parties united in interest and pleading together, verification must be by one at least of such parties acquainted with the facts, and that when a corporation is a party the verification may be made by an officer thereof, the verification of the

Trade Press Pub. Co. v. Milwaukee Typo. Union, 180 Wis. 449.

complaint, made by an officer of one of the parties plaintiff who swore that he knew the contents of the complaint and that it was true to his own knowledge except as to things stated on information and belief and as to those he believed it to be true, and who also stated his source of knowledge, was sufficient within the statute.

4. The complaint sufficiently discloses the property and rights involved to meet the requirements of ch. 211, Laws 1919, and of secs. 2774, 2776, Stats.; and anything further should be sought by a motion either for a bill of particulars or to make the complaint more definite and certain.

5. Of possible constructions of a contract, that must be adopted which would make it lawful rather than one which would make it unlawful.

6. A contract by employing printers that there should be no individual but only collective bargaining with labor unions on the question of a closed or open shop which did not show a purpose to unlawfully interfere with, impair, or impede the individual members of a typographical union or other individual workmen so as to require a holding that it was in violation of public policy, was not violative of secs. 1747c, 4466a, 4466b, or 4568, Stats.

CROWNHART and JONES, JJ., dissent.

APPEALS from orders of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Each affirmed.*

Separate appeals from two orders, one overruling the demurrer to the complaint and the other continuing an injunction, were presented and decided together.

The parts of the complaint so far as deemed material are in substance as follows:

The plaintiffs, ten in number, Wisconsin corporations for many years last past, engaged in the printing business in the city and county of Milwaukee. They employ on an average 125 compositors or type-setters. Each has built up a large and valuable business with a valuable good will. Each has had contracts for printing work with customers within and without the city of Milwaukee.

"That all of the plaintiffs herein have an interest in the subject of this action and in obtaining the relief demanded, and are all united in interest as plaintiffs, and that the alleged

conspiracy of the defendants as hereinafter set forth, and the unlawful acts done pursuant thereto, were directed and done to affect all of the plaintiffs jointly and severally, and all are still being so directed and so done."

That July 1, 1918, through a committee of a voluntary association of which all the plaintiffs were members, they entered into a contract to last until June 30, 1921, with the *Milwaukee Typographical Union No. 23.* Such contract provided for a fixed scale of wages for the employed members of such union; limitations as to the number of apprentices to be employed and as to the wages to be paid learners; that the plaintiffs should employ in their respective plants such mechanics and workmen only as were members of the defendant union; and a standard work week of forty-eight hours.

That the said *Union No. 23* is an unincorporated voluntary labor organization and the individual defendants are members thereof; that certain of the defendants are its officers and executive board. That among the functions and purposes of such officers and executive board is to call and direct strikes of the union members against their employers. That there are 250 members of such union, which is a unit or part of a national labor union known as the International Typographical Union, with general direction and dictation over this and similar unions in other cities of the United States.

That prior to July 1, 1921, the said local *Union No. 23,* in accordance with a nation-wide plan of the International Union, presented to and insisted that the plaintiffs sign an agreement or contract with said local union for a year beginning July 1, 1921, providing among other things for a forty-four hour standard and with increased wages and a provision requiring that none but mechanics and workmen, members of *Union No. 23,* should be employed by plaintiffs in their printing establishments. That the effect of such contract would be to continue the "closed shop." That the plaintiffs

were unwilling to enter into such agreement and so informed the local union. That the plaintiffs had theretofore acted together in treating with said union through one agency.

That on said July 1st, in pursuance of a conspiracy between the defendants as individuals and as members of such local union, and countenanced and directed by the International Union, the local union called a strike of the compositors, who then and there left plaintiffs' employment in a body and remained out thereafter.

That about August 9th the plaintiffs, with other printing firms of the same city, agreed that they would operate their composing rooms on an open-shop basis as had been done since July 1st, and further agreed not to enter into any agreement or contract, directly or indirectly, with said local union; such being done from plaintiffs' conclusion that it was for their best interests to continue to operate as an open shop and not to deal with the said union or any union of compositors. That the plaintiffs announced in the public press and otherwise, and especially in writing to the local union, of such contract on the part of the plaintiffs and other printing firms, some of which had also been under similar contracts with the defendant local union. That about October 15th plaintiffs entered into individual contracts with employees in their composing rooms. The form of such individual contracts provided, among other things, for the employment by the separate plaintiffs of the individual employee for a period of one year; subject to termination by either party on one month's written notice; with a provision as to the weekly wage subject to mutual adjustment at the end of the calendar month; that forty-eight hours shall constitute a work week, and providing that the employer may, if the employee's work has not proven satisfactory, terminate the employment without liability except for wages; that the employer will continue to operate upon the open-shop basis, and that during the period of employment the employee shall not become a member of any strike or boycott.

That on October 25th notice in writing was given on behalf of the plaintiffs to the defendant union that plaintiffs had entered into such written contracts with their employees and requesting that the union forthwith cease in attempts at interference with the contract relation existing between the plaintiffs and their employees.

It further alleged, on information and belief, that the contents of such notice were communicated to the defendants and other members of the local union. That ever since the calling of the strike above stated plaintiffs have lawfully endeavored to continue their business and to engage and retain employees in their composing rooms; that the defendants have illegally and unlawfully interfered with the plaintiffs by threatening various of their employees and operatives with bodily injury if they would not join the strikers; have stopped many of the plaintiffs' employees as they were lawfully and peacefully entering the plants and called them "scabs," "skunks," "rats," and other vile names; have struck, assaulted, and wounded numbers of plaintiff's employees while going to and returning from their homes and work; have sought to make plaintiffs' employees leave their employment; have gathered in numbers in and about the plaintiffs' plants; have obstructed and attempted to obstruct the free passage of plaintiffs' employees to and from their premises. Various other acts are alleged of interference, harassing and injuring the plaintiffs' employees. Also the gathering in groups of defendants, their agents and confederates, at or near plaintiffs' premises, of picketing and patroling the highways near and approaches to plaintiffs' plants for such purposes of intimidation; that various of plaintiffs' employees have been intimidated and put to fear by reason of such acts, which are still continued.

That despite the notices above recited given to defendants of the purpose of plaintiffs to run on an open-shop basis, the defendants continued to conspire to force the plaintiffs to enter into agreements with the defendant local union to con-

duct closed-shop composing rooms, and that the purpose of the conspiracy and the acts have been for such purpose. That the good will of the plaintiffs' businesses has been damaged and interfered with by such acts of the defendants, and that they are bent in their conspiracy upon destroying and wrecking such businesses and have illegally and unlawfully interfered with the contract relation between the plaintiffs and their present employees. That plaintiffs are without adequate remedy at law, inasmuch as the defendants threaten to continue and are continuing in their conspiracy the illegal and unlawful acts in said complaint set forth and will so continue unless restrained by the court.

Plaintiffs demanded as relief that the defendants, their agents, servants, confederates, and attorneys, be perpetually enjoined from further carrying out the conspiracy and for a temporary injunction, and for an accounting for any damages, and for other and further relief.

The complaint was verified on November 4, 1921, the substantial parts of which verification are as follows:

"State of Wisconsin,
"County of Milwaukee. } ss.

"Edward J. Meisenheimer, being first duly sworn, on oath deposes and says that he has heard read and knows the contents of the above and foregoing complaint and that the same is true to his own knowledge except as to those matters therein stated on information and belief, and as to those matters he believes it to be true; and that the reason this verification is made by this affiant is that all of the plaintiffs herein are corporations united in interest and that this affiant is an officer of one of the plaintiffs, to wit, the *Meisenheimer Printing Company*, and that this affiant is an officer thereof, to wit, its president, and that this affiant's source of knowledge is the actual observance of the matters set forth in the complaint and inspection and knowledge of the documents therein described and reports made to this affiant by subordinates in the usual course of business.

"(Signed)    EDWARD J. MEISENHEIMER."

Numerous affidavits were at the same time presented on behalf of the plaintiffs as to occurrences between the time of calling of the strike July 1st and the commencement of this action.

Upon such complaint and affidavits a temporary injunction was issued on November 4th and upon a subsequent hearing the same was modified to some extent and as so modified continued.

Prior to such hearing and used thereon an adverse examination was had of certain officers of the plaintiffs. From such examination it appeared, among other things, that the plaintiff corporations had no financial interest in one another's business; that the contract between the plaintiffs and other employing printers of August 9th referred to in the complaint recited and provided in substance as follows: Prior contracts which some of the thirty-three signers had with the local union terminated June 30th and provided for the running of the composing rooms on a closed-shop basis. That the local union had made harsh and unjust demands designed to strengthen control of the unions over such businesses and resulting in increased cost of production. That the parties thereto believed that their composing departments should be conducted to afford equal opportunities for all; that the worker is worthy of his hire and should have a wage commensurate with his efficiency and ability; and that the parties severally desire that each should stand upon a basis of equal opportunities with all the others in efforts to secure or retain employees and secure labor or to conduct their business affairs, and that in such efforts none of the parties thereto should be preferred over the other parties or discriminated against by any of them or by organized labor; that they recognize the existence of unlawful practices of unfair labor unions; that they believe that such unfair labor unions will be powerless to injure any of them if they stand as a unit against unfair measures but without prejudice or discrimina-

456     SUPREME COURT OF WISCONSIN.     [MAY

Trade Press Pub. Co. v. Milwaukee Typo. Union, 180 Wis. 449.

tion against just demands of wage earners. That if any of the parties should, through selfish interest or fear of coercion, yield to unfair demands of organized labor unions, the entire power of organized labor might turn its destructive forces against the other parties. They therefore agreed that no one of the parties will directly or indirectly enter into any kind of arrangement or contract with the local union or any other labor organization unless such arrangement or contract is concurred in and has the sanction of all the parties thereto, and that they will not commence or engage in any negotiations relative thereto immediately or at any time in the future and will do nothing inconsistent with such agreement in the operation of their business or in their dealings with labor unions or organizations. It recited that since the damages for violation of any such agreement are uncertain and incapable of exact estimate, it was agreed that any party violating such agreement should pay five per cent. of his mechanical pay-roll for the year 1920 as liquidated damages, such amount to be distributed in certain proportion among such members thereto who shall not have violated the same. It also provided for consent to the issuing of an injunction against any actual or threatened breach of such agreement. That a breach by any of the parties will not release the remaining parties as against each other except that, if it be breached by twenty-five or more, any remaining party may declare it canceled on ten days' notice. That it can be terminated as to any one of such parties by ninety days' notice to each other after one year from date. It was recited as binding the heirs, executors, successors, and assigns of the parties.

The individual defendants who had been served and appeared, other than the local union, demurred to the plaintiffs' complaint for the following reasons: (1) that several causes of action have been improperly united; (2) that the complaint does not state facts sufficient to constitute a cause of

action; (3) that the court has no jurisdiction of the persons of the defendants; (4) that the court has no jurisdiction of the subject of the action.

Upon hearing the demurrer was overruled by order of June 12, 1922. On June 15, 1922, an order was entered denying defendants' motion to vacate said modified injunctional order excepting as to four of the plaintiffs specified, as to whom it was vacated without prejudice. From the order overruling the demurrer and the subsequent order denying the vacation of the injunctional order the defendants have brought these two appeals.

For the appellants there was a brief signed by *W. B. Rubin* of Milwaukee, of counsel, and oral argument by *Mr. Rubin.*

For the respondents there was a brief by *Lamfrom & Tighe,* attorneys, and *Leon B. Lamfrom,* of counsel, all of Milwaukee, and oral argument by *Leon B. Lamfrom.*

ESCHWEILER, J. Defendants contend in support of their demurrer that the several plaintiffs, each carrying on his own establishment and each being financially independent of the others, cannot be properly joined as plaintiffs.

By sec. 2602, Stats., it is provided that

"All persons having an interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs, except as otherwise provided by law."

Parts of sec. 2604, Stats., so far as here material, are as follows:

"And when the question is one of a common or general interest of many persons . . . one or more may sue or defend for the benefit of the whole."

We gather from the face of the complaint that this is an equitable proceeding to enjoin the defendants from further carrying out a conspiracy alleged to exist between them as a class with the avowed purpose of interfering with legal rights of plaintiffs. Such conspiracy is aimed at a

class of persons, namely, the employing printers of the city of Milwaukee, rather than at individuals. The subject of the action, therefore, presents a question of a common or general interest of many persons, and is a situation where one or more of a class may sue for their own benefit and for the benefit of others having a similar interest in obtaining the relief demanded.

We deem this squarely within and controlled by the holding as to the second cause of action alleged in the case of *Hawarden v. Youghiogheny & L. Coal Co.* 111 Wis. 545, 87 N. W. 472. The defendants in that case were wholesalers, certain foreign corporations and their agents at Superior as of one class and some of the retail coal dealers of another class. The plaintiff, a retail coal dealer, alleged that he sought equitable relief by way of perpetual injunction to restrain the continuance by defendant of the alleged conspiracy; that he was suing on his own behalf and on behalf of all other retail coal dealers who might desire to become parties to the action and who were situated as he was. It was held upon demurrer (p. 552) that he alone might properly bring such action in equity and on behalf of others, recognizing thereby that more than one might properly have joined as plaintiffs as is done in this case. To the same effect are such cases as *R. R. Kitchin & Co. v. Local Union No. 141*, 91 W. Va. 65, 112 S. E. 198; *Baldwin L. Co. v. Local No. 560*, 91 N. J. Eq. 240, 109 Atl. 147.

We may say in passing that while in the prayer for relief in the present case plaintiffs ask that an accounting may be had of the damages already occasioned by the defendants and each and all of them ordered to pay the plaintiffs such damages as may be so ascertained, yet there is nothing in the body of the complaint showing a state of facts upon which it might be construed such an action at law for damages as was the first count in the *Hawarden Case, supra,* where an action for damages was held improperly joined

with the separately stated cause of action for equitable relief. The prayer for relief being no substantive part of the complaint (*Williams v. Oconomowoc,* 167 Wis. 281, 284, 166 N. W. 322), that plaintiff asks for more relief than that which his pleaded facts entitle him to have is not reached by demurrer. *Neacy v. Drew,* 176 Wis. 348, 360, 187 N. W. 218.

Appellants also argue that, this being an action for injunctional relief in a labor dispute, the complaint is not sufficient to comply with the requirements of ch. 211, Laws of 1919, which was before this court in *A. J. Monday Co. v. Automobile, A. & V. Workers,* 171 Wis. 532, 177 N. W. 867, or with the terms of secs. 2774 and 2776, Stats., containing the general provisions for the granting of injunctions, in that (1) the complaint is not properly verified and therefore the court lacks jurisdiction to proceed; (2) that there is a lack of necessary particularity as to the property or property rights threatened to be injured.

The verification is given in full in the statement of facts and we deem it a compliance with sec. 2666, Stats., which provides that, if there be several parties united in interest and pleading together, the verification must be made "by one at least of such parties acquainted with the facts." The same section also provides that "when a corporation is a party the verification may be made by any officer thereof." The verification here was made by an officer of a plaintiff corporation and is a proper one in that respect. It is made by an officer of one of the parties plaintiff, who swears that he knows the contents of the complaint and that the same is true to his own knowledge except as to those things stated therein on information and belief and as to those he believes it true, and that his source of knowledge is the actual observance of the matters set forth in the complaint, inspection and knowledge of documents therein described, and reports made to him by subordinates in the usual course of business.

We find nothing lacking in any of the statutory requirements for such a verification.

The objection as to want of particularity in this complaint we also deem not well taken. There is sufficient disclosed as to the property and property rights involved to meet any reasonable interpretation to be given to the statutes relied upon by appellant and cited *supra*. Anything further should be more properly reached by a motion for a bill of particulars or one to make the complaint more definite and certain.

On the appeal from the order continuing the modified temporary injunction, defendants urge, in addition to the objections to the complaint above discussed and determined, that the complaint is without proper supporting proof by affidavits, and that the plaintiffs, by their contract of August 9th, are not in court with clean hands and for that reason should be denied relief. We deem that so far as the questions of fact are involved there is sufficient support in the record to warrant the conclusion arrived at by the trial court, and do not consider it necessary to recite or consider them in detail.

Defendants insist that the agreement between the plaintiffs and other printing establishments of August 9th, the substance of which is set forth in the statement of facts *supra,* shows upon its face a violation of either sec. 1747*e,* Stats., prohibiting contracts or combinations in restraint of trade or commerce; or sec. 4466*a,* prohibiting combinations for the purpose of injuring any one in his trade or business; or sec. 4466*b,* prohibiting blacklisting or coercion; or sec. 4568, relating to common-law conspiracy; or, finally, that the purpose of such contract is contrary to good public policy; and that for any and all of such reasons the plaintiffs ought not to be heard in a court of equity to obtain relief against defendants charged with a conspiracy to injure plaintiffs when the plaintiffs themselves are parties to a contract which should equally merit the condemnation of the court.

Of possible constructions of such contracts, that must be

adopted which would make it lawful rather than one making it unlawful. *Pulp Wood Co. v. Green Bay P. & F. Co.* 157 Wis. 604, 617, 147 N. W. 1058. We can find nothing on the face of the contract here presented which can be reasonably construed to be a violation of any one of the specific statutes just above cited. It is in effect an agreement that there shall be by the employer no individual but only collective bargaining with the union or other labor unions. On its face it does not show a purpose to unlawfully interfere with, impair, or impede the individual defendants or other individual workmen so as to require a holding that it is a violation of public policy. *Booker & Kinnaird v. Louisville Board, etc.* 188 Ky. 771, 224 S. W. 451, 21 A. L. R. 531.

It follows from what has been said that each of the orders appealed from must be affirmed.

*By the Court.*—Orders affirmed.

JONES, J., dissents.

CROWNHART, J. (*dissenting*). I regret I cannot concur in the opinion of the court. It seems to me that we have here a judicial sanction by a court of equity of an unlawful boycott in an aggravated form. It is a universal rule of equity that the plaintiff must come into a court of equity—a court of conscience—with clean hands. The plaintiff must be able to appeal to the conscience of the court because he is free from wrong himself and has right and justice on his side. It is' in such cases, and such cases only, that this court, under its equity jurisdiction, will grant relief. We are not called upon to approve the acts of the defendants. We may concede for the purposes of this case that they are wrong and that if the plaintiffs are without fault they are entitled to relief. So we will look to the plaintiffs to see if they are innocent of wrong doing.

The plaintiffs are ten separate corporations engaged in the

printing business. They combined and confederated with substantially all the other employing printers of Milwaukee into a union or monopoly of employers to deal with their employees, and in this resulting combine they agree to boycott the union of their employees. This union of employees is a voluntary organization of workmen and is lawful in itself, and as such recognized by the statutes of the state and its public policy. The plaintiffs and their confederates agree, under severe penalties for failure to stand by the agreement, to refuse to deal in any manner as individuals with the union of their employees for the term of one year, and having so agreed they seek from this court, sitting in equity, an injunction against their employees alleged to be engaged in wrongful acts against their employers, the plaintiffs here. Now, as I take it, this court does not deny the universal doctrine of equity that if the plaintiffs are themselves engaged in an unlawful combine they should be thrown out of a court of equity and relegated to a court of law. If we look back of the pretentious recitals preceding the agreement the purposes of the combine cannot be mistaken. It is to utterly destroy the workmen's union, which is a lawful organization, and force the employees to deal with the combine as individuals. It has long been recognized that in such a position the workman is forced to accept his employer's terms. No individual workman can bargain on an equal footing with organized capital.

To clearly understand the effect of the ruling of the court it is well to divorce the case from the prejudice against workmen's unions growing out of strikes, and plant the ruling on a supposititious case. Suppose, then, that the bankers of the state should confederate into a monopoly of credit and should agree that as individual bankers they would have nothing to do with any farmers' co-operative society, which would mean the ruin of the farmers' co-operative societies because of lack of credit. Will any one say that such a conspiracy on the part of the bankers would be lawful?

Trade Press P. Co. v. Milwaukee T. Union, 180 Wis. 449. Dissent.

Again, suppose all the newspapers in Milwaukee should confederate and agree that for the space of one year or more they would not have any dealings with some particular store. They, then, would not accept advertising from that store, with the result that its business would be ruined. Would such a conspiracy be legal? One more illustration: Suppose all the packers should confederate and conspire to drive some meat market out of business, and to that end they should refuse to deal with such market for the space of a year. What would happen to the market? Would it not be driven out of business, and would such an agreement be legal? Either case would bring the conspirators under the ban of the common law. Such a combine is against public policy.

The mere statement of the case applied to the possibilities under the ruling of the court should be enough to show this.

"As often declared, law is not alone the product of abstract reasoning, but of experience as well. It is the outcome of logic of the mind confirmed by the logic of events. The consequences of the application of a rule often furnish the most potent argument in its support or are most persuasive in its condemnation." *Dawson v. Nat. L. Ins. Co.* 176 Iowa, 362, 157 N. W. 929.

But the court is not driven to the extremity of formulating a public policy, for that has been done by the legislature. Sec. 4466*a*, Stats., provides:

"Any two or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of wilfully or maliciously injuring another in his reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding five hundred dollars."

The effect of the unlawful agreement made by the employing combine is: to prevent the workmen from collective

bargaining; to reduce them to the position of individual bargaining, which is recognized by law and by sound economic principles as inadequate to the welfare of workmen or society as a whole; and to destroy the union of workmen, which is undoubtedly the prime purpose of the illegal combine.

This brings the case squarely within the anti-boycotting statute just quoted.

It should be unnecessary to discuss these propositions at length. It seems clear that the combine of employers is illegal and criminal. It follows that the plaintiffs are improperly joined as plaintiffs in the action, and that they are not entitled to equitable relief. This court should refuse to recognize the plaintiffs and should dismiss the action. For these reasons I respectfully dissent.