Spencer Co-operative Live Stock Shipping Association, Respondent, vs. Schultz and another, Appellants.

*October 11—November 9, 1932.*

For the appellants there was a brief by *Drought & Drought* of Milwaukee, and oral argument by *James T. Drought.*

For the respondent there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

FRITZ, J.   In the complaint, challenged by defendants' demurrer, it is alleged that the plaintiff is a co-operative marketing association organized and operating under ch. 185, Stats., and is located and engaged in business in Clark county; that prior to September 9, 1931, plaintiff entered into contracts with certain persons, all residents of said county, for the purchase of live stock from them; that said persons are members of the plaintiff association and that each of them signed a marketing contract, which was duly filed in the office of the register of deeds for Clark county, and in which there were the following provisions:

"The member agrees to market all of his hogs, calves, sheep, and cattle through the association except live stock of every character sold by him for home consumption, for home butcher, breeding and dairy purposes, as so conclusively classified by the board of directors; . . .

"The member shall pay to the association his annual membership fees and such fees as may from time to time be prescribed by the directors to cover all costs and expenses incurred by the association in the handling and marketing of his live stock and to provide the proper reserves; . . .

"The member expressly instructs the association to collect for his account any money which any firm, person, or corporation may consider due to the member for live stock de-

livered by the member, and the member hereby agrees that the association may accept any such payments and receipt therefor in the name of the member; and that such payment to the association or receipt of the association shall operate to release the said person, firm or corporation from any corresponding obligation to the said member;"

that defendants, having knowledge of said agreements and of the record thereof, purchased live stock from said members and threatened to continue to buy live stock from the producer members of said association; and that the title to the stock so purchased by defendants was vested in plaintiff by virtue of said agreement at the time of such purchase by defendants. The complaint prays for a temporary and permanent injunction, restraining the defendants from purchasing live stock from the producers mentioned in the complaint, or other members of the association, and for an accounting for stock actually purchased, and for damages.

On this appeal from an order overruling their demurrer defendants assign as error that under the contracts, upon which this action is based, there is no sale of live stock to plaintiff, but that it is thereby merely appointed the agent of its members for the purpose of selling their live stock, and that consequently those contracts are not within the Co-operative Marketing Act, ch. 185, Stats. 1931; and that the members from whom it is alleged that defendants purchased live stock in violation of the contracts are necessary parties to this action.

Defendants are right in their contention that the contracts in question are not contracts of sale. Instead, they are contracts of agency (*Haarparinne v. Butter Hill F. G. Asso.* 122 Me. 138, 119 Atl. 116; *Kelowna Growers' Exchange v. De Caqueray* (B. C.) 70 Dom. Law Rep. 865; *Johnson v. Staple Cotton Co-op. Asso.* 142 Miss. 312, 107 South. 2; *Mountain States B. G. M. Asso. v. Monroe,* 84 Colo. 300, 269 Pac. 886), under which each member agrees to market

his live stock through the association; to pay the costs and expenses incurred by the association in handling and marketing his live stock; and instructs the association to collect for his account money due on the sale of live stock and to receipt therefor in his name. But even as contracts of agency, the contracts are within the provisions of the Co-operative Marketing Act, and, as such contracts, they can be filed in the office of the register of deeds for the purposes and effect prescribed by that act. Thus, in sub. (5) of sec. 185.08, Stats., it is expressly provided that "The association may cause to be filed . . . a copy of any such contract to sell to or *through* the association." Manifestly, selling "through" as distinguished from "to" the association occurs when the latter acts as agent and not as vendee. Likewise that contracts of agency are included within the scope and protection of ch. 185, Stats., is demonstrated by the fact that in sub. (8) of sec. 185.08, Stats. (which was added by the enactment of ch. 181, Laws of 1925), the legislature expressly declared that the legislative intent to prevent wrongful interference with any contract between an association and its members by resorting to the judicial relief provided for by sub. (6) of sec. 185.08, Stats., extends to all of such contracts, "no matter whether said contract is such a contract to sell to the association or is one of agency or otherwise." As the filing of plaintiff's agency contracts was authorized by statute, an interest in the title of the live stock of the member who signed such contracts vested in plaintiff, by reason of the provision in sec. 185.08 (5), Stats., that—

"From and after the date of such filing the same shall constitute notice to any and all persons that an interest in the title to all property so agreed to be sold by the maker of such contract during the term of such contract is vested in the said association."

By virtue of that provision, the marketing agency of the association is clearly coupled with a vested interest in the live

stock of the members who signed the contracts upon which plaintiff relies in this action. Although that interest may not include the complete title, with all of the incidents of a complete title, it is a substantial interest, as is an agent's interest under an agency coupled with an interest at common law. See 21 Ruling Case Law, p. 824, § 8; 2 Corp. Jur. p. 830, § 504, p. 899, § 600; *Hunt v. Rousmanier,* 8 Wheat. (U. S.) 174, 5 Lawy. Ed. 589; *Raymond v. Squire,* 11 Johns. (N. Y.) 47; *Terwilliger v. Ontario C. & S. R. Co.* 149 N. Y. 86, 43 N. E. 432; *Perkins v. Hershey,* 77 Mich. 504, 43 N. W. 1021; *Bird v. Phillips,* 115 Iowa, 703, 87 N. W. 414; *Hilliard v. Beattie,* 67 N. H. 571, 39 Atl. 897; *Bowling v. National C. & T. Co.* 101 Fla. 634, 135 South. 541; *Royal Society v. Campbell,* 17 R. I. 402, 22 Atl. 307, 13 L. R. A. 601; *Mulloney v. Black,* 244 Mass. 391, 138 N. E. 584; *Rowan & Co. v. Hull,* 55 W. Va. 335, 47 S. E. 92, 2 Ann. Cas. 884; *McKellop v. Dewitz,* 42 Okla. 220, 140 Pac. 1161, 52 L. R. A. N. S. 255. That interest, by virtue of sec. 185.08 (5), Stats., attaches to all live stock to which the association's contracts of agency relate, and it is not merely an interest in the proceeds of a sale of live stock which has been made by the association.

For the protection of such interest of the association as exists by virtue of any recorded contract within ch. 185, Stats., it is provided in sec. 185.08 (5):

"In case of a purchase thereafter of any such property by any party other than the association from any party other than the association, no title of any kind or nature shall pass to such other purchaser;"

and also that—

"The said association may recover the possession of such property from any and all such other parties or from any party in whose possession the same may be found, by replevin action, or may sue for an injunction."

In addition it is provided in sec. 185.08 (6) that—

"Any person who, with knowledge or notice of the existence of the contract, induces or attempts to induce or aids in the breach thereof by any means, shall be liable to the aggrieved party for damages on account of such interference with said contract and shall also be subject to an injunction to prevent the interference or further interference therewith."

The validity of sec. 185.08, including the provision relating to the constructive notice afforded by proper filing of the contract with the register of deeds, was upheld in *Watertown M. P. Co-op. Asso. v. Van Camp P. Co.* 199 Wis. 379, 388, 392, 225 N. W. 209, 226 N. W. 378. By the contract involved in that case a member appointed "the association his sales agent to sell all the milk or manufactured product thereof produced by him or on farms controlled by him, and to deliver said milk or the manufactured product thereof as the association may from time to time direct" (p. 389). This court said in special reference to sec. 185.08 (5), Stats.:

"Sec. 185.08 (5) had substantially modified the effect of such contracts as well as the rights of others to purchase the product affected by such contracts. The title to the product affected by the contract is vested in the association. Others purchasing the product, charged with constructive notice of the existence of the contract, acquire no title thereto. But the person so purchasing must be charged with constructive notice in order to be subject to the consequences denounced by par. (5). The idea of the law is that the filing with the register of deeds of a copy of the uniform contract, together with a sworn list of those who have entered into the contract, gives such constructive notice. However, in order for such filing to so operate, the provisions of the statute must be substantially complied with."

Consequently, by virtue of the contracts, upon which this action is based, plaintiff is entitled to maintain this action for the relief provided by statute, by way of injunction, and the recovery of damages sustained on account of defendants'

interferences with such contracts. The purpose of the action is not to enforce performance of personal service by the plaintiff as an agent, but is to enjoin unlawful interference with property in which it has an interest which is provided for and protected by statute. As the judicial relief sought is expressly authorized by statute to protect the association's interest in the property to be marketed, and is not to specifically enforce performance of services by the association, the rule, that contracts for personal services are not usually specifically enforced by injunction, is not applicable as defendants contend. Likewise, questions suggested in defendants' brief as to the rights of a mortgagee under a mortgage given by a member subsequent to the filing of a contract under sec. 185.08 (5), Stats., are immaterial on this appeal as no such rights are asserted or involved in this case.

The members of the plaintiff association from whom the defendants purchased live stock in violation of the contracts of agency with the plaintiff are not necessary parties to this action for relief under sec. 185.08 (6), Stats., because of unlawful interference with such contracts. Such interference is a tort, and "one of a number of tortfeasors may be sued alone without joining others; each is responsible for the whole wrong." *Helberg v. Hosmer,* 143 Wis. 620, 622, 128 N. W. 439. It will be noted that the members who breached their contracts were not made parties by the plaintiffs in *Northern Wis. Co-op. Tobacco Pool v. Bekkedal,* 182 Wis. 571, 197 N. W. 936, and *Watertown M. P. Co-op. Asso. v. Van Camp P. Co., supra,* although in the latter case, upon their own application, certain members were permitted to become parties defendant. It is true that in the event of the breach of such a contract by a member, an association is entitled also to judicial relief against such a member by way of damages under sec. 185.08 (3), Stats., and by injunction and specific performance under sec. 185.08 (4). However, the

plaintiff in this action is not now seeking any such relief against any of its members. On the contrary, it is only seeking relief against the defendants because they are alleged to have unlawfully interfered with plaintiff's membership contracts and are therefore liable under sec. 185.08 (6). Although in case of breach by members of membership contracts, which are within ch. 185, an association could sue such members for the relief authorized by sec. 185.08 (3) and (4), and could also sue any person, who unlawfully interferes with such contracts, for the relief authorized by sec. 185.08 (6), it is not obliged, when it resorts to litigation to enforce its rights under sec. 185.08 (6), to also seek relief under secs. 185.08 (3) and (4), against its members for their breaches of contract; and it is not obliged to join them as defendants in an action for relief under. sec. 185.08 (6).

If, as defendants contend, the prayer of the complaint is for a greater measure of damages than the plaintiff is entitled to recover of the defendants in this action, an erroneous allegation in that respect does not render the complaint demurrable. As this court said in *Trade Press Pub. Co. v. Milwaukee Typo. Union,* 180 Wis. 449, 459, 193 N. W. 507 :

"The prayer for relief being no substantive part of the complaint, . . . that plaintiff asks for more relief than that which his pleaded facts entitle him to have is not reached by demurrer."

*By the Court.*—Order affirmed.