D'Angelo, Plaintiff, v. Cornell Paperboard Products Company, Defendant: Employers Mutuals Liability Insurance Company, Intervenor and Respondent: Indemnity Insurance Company of North America, Impleaded Defendant and Appellant.

*February 7—March 5, 1963.*

392

For the appellant there were briefs by *Kivett & Kasdorf*, attorneys, and *Alan M. Clack* of counsel, and oral argument by *Fred D. Huber, Jr.*, all of Milwaukee.

For the respondent there was a brief by *Burlingame, Gibbs & Roper* and *Moore & Moore*, all of Milwaukee, and oral argument by *Gary E. Moore* and *Richard S. Gibbs*.

WILKIE, J.  The sole issue on this appeal is whether the amended complaint and cross complaint states any cause of action by Employers against Indemnity. The well-established rule, of course, is to construe the complaint liberally in testing whether the demurrer should be sustained.[1]

The pertinent portions of the amended complaint and cross complaint here are as follows:

"5. James D'Angelo, while in the scope of his work and employment, on or about the 9th day of January, 1958, received . . . personal injuries . . . . As a result of such injuries said James D'Angelo was permanently disabled and incurred substantial medical expenses, suffered a loss of income, and will continue to suffer such loss of income.

"6. The intervening plaintiff, Employers . . . , on its behalf and on behalf of Cornell Paperboard Products Company, . . . paid to the plaintiff, James D'Angelo, the sum of one Hundred Twenty Thousand and No/100 ($120,000) Dollars and *received from him and from his workmen's compensation insurance carrier an assignment of their rights arising out of said accident and injuries. The payment by the Employers Mutuals was by reason of the asserted liability of Cornell Paperboard Products Company to the said James D'Angelo,*

---

[1] Secs. 263.07 and 263.27, Stats., require a complaint to be liberally construed when tested by demurrer.

*Arnold Joerns Co. v. Roberts* (1962), 16 Wis. (2d) 333, 114 N. W. (2d) 416.

*Employers Mutuals having theretofore issued a policy of comprehensive liability insurance in favor of the said Cornell Paperboard Products Company insuring it against liability arising out of its negligence or the negligence of its employees. . . . That by such payment Employers was, additionally, subrogated to any rights of Cornell against Indemnity.* [Emphasis added.]

"7. Prior to the 9th day of January, 1958, Indemnity . . . had issued and there was outstanding its automobile liability insurance policy under which it insured the said Cornell Paperboard Products Company against liability for injuries arising out of the . . . use or operation of motor vehicles by the said Cornell Paperboard Products Company or by its employees . . . . By its terms, coverage of said policy was extended to include . . . the use of the trailer unit hereinafter described and that said policy by its terms and under the circumstances of this case covered the . . . use and operation of a forklift truck to which reference is hereinafter made.

"8. That on the 9th day of January, 1958, said James D'Angelo together with the aforementioned Howard Venz and another employee of the defendant Cornell and while on the premises . . . of Cornell, were engaged in the unloading of large bundles of compressed paper from a trailer unit, which, under the policy of Indemnity . . . was an insured vehicle so that the liability arising out of the use thereof was insured thereunder *and that by reason thereof, said defendant, Indemnity . . . is liable for the consequences, arising out of such use, of any negligence in the use thereof.* [Emphasis added.]

"9. That the said policy of the defendant, Indemnity . . . also defined the term 'insured' to include any person while using any vehicle with the consent of the insured and that the said Howard Venz, in using the aforesaid trailer and a forklift truck, . . . was using vehicles with the consent of the insured thereby becoming an additional assured whose liability is covered and insured under the terms of the aforesaid policy.

"12. That the injuries of the said James D'Angelo, as he has alleged, were proximately caused by negligence of the

employees of Cornell, including the said Howard Venz, in the use and operation of the forklift truck, a vehicle insured under the policy of Indemnity . . . and in the loading and unloading of the platform truck which was a similarly insured vehicle in such use; . . .

"13. *The intervening plaintiff, having made the payment hereinabove described, became subrogated to the rights of Cornell against Venz and against the insurance carrier, Indemnity, and has the right to assert its claim in respect thereto.* [Emphasis added.]

"14. . . . That by reason thereof [describing the personal injuries], the said James D'Angelo was damaged in the sum of Three Hundred Thousand and No/100 ($300,000) Dollars. That the Employers Mutuals by reason of the assignment hereinbefore alleged and of the negligent injury so received, plaintiff, James D'Angelo, is entitled to judgment against Indemnity in the sum of Three Hundred Thousand and No/100 ($300,000) Dollars.

"Wherefore, intervening plaintiff, Employers Mutuals Liability Insurance Company, on its own behalf and as assignee of James D'Angelo, Continental Casualty Company, and Cornell Paperboard Products Company, demands judgment against defendant, Indemnity Insurance Company of North America, in the sum of Three Hundred Thousand and No/100 ($300,000) Dollars, together with the taxable costs and disbursements herein."

Indemnity contends that the amended complaint and cross complaint is demurrable in that it does not allege the essentials of a cause of action based on subrogation and the claimed cause of action grounded on the assignment is defective because such an assignment is champertous and void as against public policy.

The trial court did not consider whether the amended complaint and cross complaint stated a good cause of action grounded on subrogation but dismissed Indemnity's contentions that the assignment was champertous and against public policy.

In Wisconsin, contrary to the rule in a majority of states, causes of action for personal injuries are assignable.[2]

In the case at bar we are asked to go further and determine whether, although a personal-injury action may in general be assignable, under the circumstances of this case this particular assignment was both champertous and against public policy.

The usual method for settling a personal-injury claim as between the injured party and a number of joint tort-feasors and their insurers, if one of the tort-feasors or one of his insurers wants to settle the matter and the others do not, is for the insurer and his insured to make a payment to the injured party. The insured and insurer simultaneously take a complete release discharging all claimed tort-feasors and their insurers from further obligation to the injured party, with the insured and his insurer being subrogated to the extent of the amount paid in its efforts to seek contribution or indemnification from the other joint tort-feasors and their insurers or from other insurers of the settling joint tort-feasor.

This procedure was not followed in the case at bar. D'Angelo, the injured party, and his workmen's compensation insurer received payment from Employers of $120,000 and in turn executed a full assignment (rather than a release) to Employers of their causes of action as against Cornell and Indemnity. Employers further alleges that because it made the payment by reason of Cornell's alleged liability and under

---

[2] Sec. 331.01, Stats., defines what actions survive and provides in part as follows: "WHAT ACTIONS SURVIVE. In addition to the actions which survive at common law the following shall also survive: Actions for . . . assault and battery, false imprisonment, or other damage to the person, . . ."

See also *Lehmann v. Farwell* (1897), 95 Wis. 185, 70 N. W. 170; *McGarvey v. Independent Oil & Grease Co.* (1914), 156 Wis. 580, 146 N. W. 895; Anno. 40 A. L. R. (2d) 500.

a general liability policy it is subrogated to the rights of Cornell against its employee, Venz, and the automobile liability insurer, Indemnity.

Although we agree with the trial court that the assignment is not champertous, in our view public policy prevents the enforcement of Employers' rights under that assignment for any amount above the $120,000 paid out by Employers. We hold, therefore, that the assignment is void for any amount in excess of $120,000, but good to the extent of $120,000 since that assignment is an integral part of Employers' cause of action against Indemnity based on subrogation.

The common-law prohibition against champerty prevails in Wisconsin. *Barker v. Barker* (1861), 14 Wis. 142 (*131); *Allard v. Lamirande* (1872), 29 Wis. 502. Sec. 331.375, Stats., modifying the common law, reads as follows:

"331.375 ABROGATION OF DEFENSE THAT CONTRACT WAS CHAMPERTOUS. No action, special proceeding, cross complaint, or counterclaim in any court shall be dismissed on the ground that a party to the action is a party to a contract savoring of champerty or maintenance unless the contract is the basis of the claim pleaded."

In *Miles v. Mutual Reserve Fund Life Asso.* (1901), 108 Wis. 421, 84 N. W. 159, we had this to say about the basis for the prohibition against champerty, at page 433:

"The real mischief which the law of champerty aims to prevent is that of encouraging litigation by persons who have no interest therein independent of that to be derived from carrying it on in whole or in part at their expense."

The object of the law against champerty is stated in *Barker v. Barker, supra,* at page 157 (*144):

"That object is to prevent strife and litigation, and this it aims to secure by forbidding parties not interested to contract for an interest in the thing to be recovered, upon condition of their carrying on the suit."

The trial court correctly determined that Employers was not an intermeddler, that Employers had a great interest in the subject of the lawsuit and was not a mere volunteer.[3] Because of the interest of Employers associated with its payment of $120,000, the assignment to Employers was not champertous.[4]

Indemnity argues that although causes of action for personal injuries are in general assignable in Wisconsin, nevertheless this particular assignment is void because it is against public policy. In substance, this claim is that it is against public policy for a cause of action to be bought up by a tortfeasor or his insurer with the idea of later prosecuting the claim for a larger sum, thus permitting the tort-feasor or his insurer to speculate in the personal injury. Unless we refer to the *ad damnum* clause in which Employers asks for $300,000, the amended complaint and cross complaint does not disclose that Employers is seeking a sum in excess of what has been paid to the injured party. A prayer for relief is no substantive part of a complaint and the fact that the plaintiff "asks for more relief than that which his pleaded facts entitle him to have is not reached by demurrer." [5]

Although we thus cannot ascertain from the amended complaint and cross complaint itself that Employers is trying

[3] Other definitions of champerty are Black's Law Dictionary (4th ed.), "A bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject sought to be recovered." Restatement, 2 Contracts, p. 1045, sec. 540, "(2) 'Champerty' is the division of the proceeds of litigation between the owner of the litigated claim and a party supporting or enforcing the litigation."

[4] See also 10 Am. Jur., Champerty and Maintenance, pp. 551, 552, sec. 4.

[5] *Trade Press Publishing Co. v. Milwaukee Typographical Union* (1923), 180 Wis. 449, 459, 193 N. W. 507. See also *Spencer Cooperative Live Stock Shipping Asso. v. Schultz* (1932), 209 Wis. 344, 351, 245 N. W. 99; *Citizens Loan & Trust Co. v. Witte* (1901), 110 Wis. 545, 546, 86 N. W. 173.

to profit by taking this assignment and prosecuting the personal-injury action against Indemnity, it is our opinion that the assignment is void as against public policy for any amount in excess of the $120,000 paid out by Employers. This court has frequently supported a policy favoring settlements.[6] It is injurious to the public for individuals to speculate in personal-injury claims. It is against public policy for an insurer, of one who is liable, to pay out a sum for the personal-injury claim of another, and then, because of an assignment of the claim, attempt to recover from another responsible party a sum greater than that paid to the injured party. Our court defined public policy in *Hawkins Realty Co. v. Hawkins State Bank* (1931), 205 Wis. 406, 236 N. W. 657, at page 416, quoting from 2 Page, Contracts (2d ed.), p. 1163, sec. 672:

" 'Contracts are against public policy when they tend to injure the state or the public. "Public policy is that principle of law which holds that no subject or citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." ' "

The assignment in the case at bar to the extent that it attempts to give Employers the right to recover from Indemnity more than the $120,000 is void as against public policy. However, we are of the opinion that the amended complaint and cross complaint does state a cause of action for subrogation, and that the assignment is an integral part of Employers' cause of action founded in subrogation.

Subrogation is a well-known equitable action. *Defiance Machine Works v. Gill* (1920), 170 Wis. 477, 483, 175 N. W. 940.[7] Subrogation may properly be applied when a person other than a mere volunteer pays a debt or demand which in equity and good conscience should be satisfied by

[6] *Rayborn v. Galena Iron Works Co.* (1914), 159 Wis. 164, 149 N. W. 701; *Kessler v. Leinss* (1920), 170 Wis. 583, 176 N. W. 236.
[7] See also 83 C. J. S., Subrogation, p. 584, sec. 3 b.

another.[8] The doctrine rests upon the theory of unjust enrichment.[9]

Employers, on payment of the $120,000, took an assignment from D'Angelo and his workmen's compensation insurer, Continental Casualty, of any causes of action they had against Cornell. Employers did not obtain the usual release. The vital question is whether the failure to obtain that release destroys Employers' right to assert subrogation. We have held previously that there is "no distinction in principle between the case of where a third party discharges the liability of another by payment and one where such liability is discharged through a release of a valid claim. In both situations the party ultimately liable is relieved of a liability which such party in good conscience ought to pay unless subrogation be invoked."[10] So here, the fact that Employers made a cash payment and received no release does not prevent Employers from asserting a cause of action founded on the claim that Employers, to the extent of the payment of $120,000, has been subrogated to the rights of Cornell against any other responsible tort-feasor (Venz) and his insurer (Indemnity).

Here, the assignment, as alleged in the amended complaint and cross complaint, was complete and D'Angelo and his workmen's compensation insurer, in their own right, are out of the proceedings and in their own right can no longer assert any claim growing out of this occurrence as against Cornell or Indemnity. In effect, the assignment accom-

[8] See *Stroh v. O'Hearn* (1913), 176 Mich. 164, 177, 142 N. W. 865, 869, cited in *Kennedy-Ingalls Corp. v. Meissner* (1958), 5 Wis. (2d) 100, 92 N. W. (2d) 247. See also Restatement, Restitution, p. 290, sec. 71 (2); 83 C. J. S., Subrogation, p. 588, sec. 5 a; id. at p. 600, sec. 8; 8 Couch, Insurance (1st ed.), p. 6588, sec. 1996.

[9] *Home Owners' Loan Corp. v. Papara* (1942), 241 Wis. 112, 120, 3 N. W. (2d) 730; *Kennedy-Ingalls Corp. v. Meissner, supra.*

[10] *Kennedy-Ingalls Corp. v. Meissner, supra,* p. 105.

plished the same result as a release would have achieved in discharging any ultimate responsibility of Cornell or Indemnity to D'Angelo and his compensation insurer. Subrogation is an equitable assignment under which the subrogee stands in the shoes of the original holder of the cause of action.[11] Under the assignment D'Angelo and his insurer, by reason of the payment and assignment, have been stripped of any right to bring a suit. Thus, Cornell and Indemnity need have no fear of D'Angelo or his workmen's compensation insurer bringing an independent action for further relief.

The purpose of insurance is indemnification. The doctrine of subrogation has been adopted to serve that purpose. Rationale for subrogation is stated by 8 Couch, Insurance (1st ed.), p. 6590, sec. 1997, as follows:

"In other words, in the absence of this doctrine the insured might often recover more than a full indemnity, and to prevent such result the courts have adopted the rule that the insured shall be entitled to only one full indemnity for the injury sustained, and from this the doctrine of subrogation has arisen. As a general rule, therefore, applicable to insurance and indemnity contracts of all kinds, the insurer, on paying to the insured the amount of the loss on the property insured, is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss. Likewise, where the tortious conduct of a third person is the cause of a loss covered by an insurance policy, the insurer, upon payment of the loss, becomes subrogated *pro tanto* by operation of law to whatever right the insured may have against the wrongdoer. The theory is that to permit the insured to receive payment from both the wrongdoer and the insured would be to give him double compensation for his loss, and that it would be unjust to compel the insurer to suffer the consequences of the wrongful act of

---

[11] 50 Am. Jur., Subrogation, p. 681, sec. 4. *Noll v. Nugent* (1934), 214 Wis. 204, 252 N. W. 574.

another by permitting such wrongdoer to shield himself by the theory that the loss was covered by insurance."

Subrogation gives indemnity only. One with a cause of action for subrogation cannot recover beyond the amount actually disbursed.[12]

The facts alleged in the complaint give rise to the right of subrogation and considering further that the doctrine of subrogation is to be given a liberal application,[13] we conclude that the complaint states a good cause of action and that the demurrer was properly overruled.

In analyzing the amended complaint and cross complaint against the demurrer, questions concerning the two insurance policies (the auto liability policy of Indemnity and the general liability policy of Employers) have not been raised and the details of these policies as they relate to questions of excess or primary coverage, and other questions, are not set forth in the record and presumably will be raised as pertinent in further proceedings.

*By the Court.*—Order affirmed.

---

[12] 83 C. J. S., Subrogation, p. 614, sec. 14.

[13] 83 C. J. S., Subrogation, p. 590, sec. 5 b, states: "The remedy of subrogation is highly favored and the courts are inclined to extend rather than to restrict the principle, and to give it a liberal application."