SCHLECHT, Administratrix, and others, Respondents, vs. ANDERSON, imp., Appellant.

*September 19—October 14, 1930.*

For the appellant there was a brief by *George G. Mac-Donald* of Ashland and *Farr & MacLeod* of Eau Claire, and oral argument by *Arthur W. MacLeod*.

For the respondents there was a brief by *Fridley & Crawford* of Superior, and oral argument by *W. P. Crawford*.

OWEN, J.  On the 13th day of March, 1922, the Farmers & Merchants Bank of Ashland, Wisconsin, being in financial difficulties, entered into a contract with the Northern National Bank of Ashland whereby it transferred to the said Northern National Bank all its assets, the latter agreeing to pay all of its debts.  In addition to this, a bond for $125,000, running to the Northern National Bank, signed by the directors of the Farmers & Merchants Bank, was required by the terms of the agreement and was executed by said directors.  By the terms of this bond it was to become void in the event that the Northern National Bank would be able to pay all of the obligations of the Farmers & Merchants Bank out of the assets of the latter bank within two years. At the end of two years the amount realized on the assets

of the Farmers & Merchants Bank were insufficient by $117,000 to meet the liabilities of the Farmers & Merchants Bank.. A new agreement was then entered into between the Northern National Bank as party of the first part, Farmers & Merchants Bank as party of the second part, and the signers of the bond as parties of the third part, by the terms of which it was agreed that $117,933.95 was due to the Northern National Bank, which amount, however, was subject to audit. Further details of this agreement will be considered later. It was dated April 12, 1924. The sureties on the bond. paid various sums to the Northern National Bank, Antoinette Schlecht paying $26,752.69; M. E. Dillon and Paul Binsfield each $15,000; James A. Smith $9,000; Lew Anderson $950, and the defendants Hanson and Woodward nothing.

This action was brought for contribution, Antoinette Schlecht, Paul Binsfield, and M. E. Dillon uniting as plaintiffs, against the other sureties. The defendant Lew Anderson demurred to the complaint. The demurrer was overruled. He thereupon answered and, after answering, appealed from the order overruling his demurrer. This appeal was dismissed on the ground that by answering he waived his right to appeal from the order overruling the demurrer. *Schlecht v. Anderson*, 197 Wis. 556, 222 N. W. 802. The case was treated as an equitable action, was tried before the court, findings of fact were made, the amount of contribution to which each plaintiff was entitled was ascertained, and judgment was rendered in favor of those entitled to contribution. From that judgment Lew Anderson brings this appeal.

The first assignment of error is that the court erred in overruling appellant's demurrer to the complaint. Under sec. 274.34, Stats., we may now review that order in so far as it "involves the merits and necessarily affects the judgment." There were three grounds of demurrer: (1) that

the complaint does not state a cause of action; (2) that there is a defect of parties plaintiff, in that it appears on the face of the complaint that the persons named as plaintiffs have separate causes of action, and that the subject of the action was several; and (3) that it appears from the face of the complaint that there is a misjoinder of causes of action, in that several causes of action have been improperly united and have been separately stated and did not affect all other parties to the action.

It is urged that the complaint fails to state a cause of action because it contains no allegation that the Farmers & Merchants Bank was insolvent, it being claimed that a surety cannot recover contribution from his co-sureties unless he is unable to recover from his principal. While it is settled in this state that such an allegation is not necessary in an action at law, whether it is necessary in an equitable action seems to be an open question. *American Exchange Bank v. Lake Motor Co.* 195 Wis. 304, 218 N. W. 590. However, we are now considering the question after judgment, and the proof not only demonstrated but the court found that the Farmers & Merchants Bank was an insolvent institution. So the lack of this allegation in the complaint does not necessarily affect the judgment. Whatever deficiency there was in the complaint has been supplied by the proofs, and the judgment has a firm foundation in this respect.

The other grounds of demurrer raise the question of whether the plaintiffs were properly united and whether their various causes of action were properly joined in this action. In view of the fact that the judgment correctly determines the rights of the various parties to this original bond, it might well be said that the judgment will not be disturbed even though the proceedings leading up to its final rendition were somewhat irregular. As was said in discussing the question of whether the complaint stated facts sufficient to constitute a cause of action, the other grounds of the de-

murrer should now be considered only in so far as they involve "the merits and necessarily affect the judgment." However, we have no doubt that the plaintiffs were properly united and that there was no misjoinder of causes of action. Such procedure seems to be authorized by sec. 260.17, which provides that "persons severally liable upon the same obligation or instrument, . . . whether the action is brought upon the instrument or by a party thereto to recover against other parties liable over to him, . . . may all or any of them be included in the same action at the option of the plaintiff." This at least specifically authorizes one plaintiff to join all the other parties as defendants. When so joined, they may file their cross-complaints and secure their share of contribution from those who have paid less than they on the common obligation. So that the same result could have been reached had this action been started by a single plaintiff. Furthermore, if all of the parties to the original bond had not been joined, it would have been at least proper for the court to bring them in under the provisions of sec. 260.19, which provides that "when a complete determination of the controversy cannot be had without the presence of other parties, or any persons not parties to the action have such interests in the subject matter of the controversy as require them to be made parties for their due protection, the court shall order them to be brought in." The matter of contribution in a case like this is a matter in which all who are interested in or entitled to contribution have a common interest, and a reference to page 4132 of Callaghan's Wisconsin Digest, under the heading "Joinder of Plaintiffs," will disclose an abundance of authority in the decisions of this court to sustain the proposition that under our statutes all those having a community of interest in the subject of the action may be joined as plaintiffs. Perhaps the most striking of the cases there cited is that of *Trade Press Pub. Co. v. Milwaukee Typographical Union No. 23,* 180 Wis. 449, 193 N. W. 507,

where it was held that a joint suit to enjoin members of a labor union from carrying out an alleged conspiracy to prevent plaintiffs' employees from working may be brought by several independent employers similarly affected by the action of the union. Such a procedure is also in harmony with equitable practices, as for example in winding-up actions, where it is held that all creditors of a corporation are deemed parties plaintiff, although their claims against the corporation are several and individual, and that all stockholders within the jurisdiction of the court whose liability upon subscriptions to stock is sought to be enforced must be made parties defendant, as declared in *Pettingill v. State Marketing Association*, 199 Wis. 200, 225 N. W. 834.

It is further contended that the court erred in striking out portions of the defendant's answer. Such portions so stricken contained allegations that the insolvency of the Farmers & Merchants Bank, if it was insolvent, was due to the mismanagement and improper conduct of the plaintiffs M. E. Dillon and F. X. Schlecht, of whose estate the plaintiff Antoinette Schlecht is administratrix, as members of the loan committee. Plainly such allegations constituted no defense to this action. It matters not what caused the insolvency of the bank. The fact remains that after the bank became insolvent the defendant joined with the other parties to this action in a bond to the Northern National Bank to secure said bank in its assumption of the liabilities of the Farmers & Merchants Bank. He is liable to the bank on that bond and, if he has not paid his just proportion, he is liable to his co-sureties who have paid more than their just share. His liability is on an obligation voluntarily assumed by him after the bank had become insolvent. The fact that the bank had become insolvent through the mismanagement of some of his co-obligors gave him, as a stockholder of the bank, no cause of action against them. Such a cause of action belonged to the bank. Because of that

fact, he would have no offset or counterclaim against their claim for contribution, and we fail to perceive any theory upon which it could be a defense to an action by them for contribution.

Other allegations are to the effect that the Northern National Bank had not efficiently administered the assets of the Farmers & Merchants Bank, and that through the mismanagement of the Northern National Bank the amount realized from the assets of the Farmers & Merchants Bank has not been so much as would have been secured by proper management. Whether under any circumstances this would constitute a defense in an action for contribution we are not called upon to consider, because by the agreement of April 12, 1924, it is specifically agreed by the appellant that said Northern National Bank "shall not be answerable for any act, default, neglect, or misconduct of any of its agents, employees by it appointed or employed in connection with the execution of the terms of this contract to be by it executed, or in any way answerable or accountable under any circumstances whatever, except for gross neglect or wilful misconduct." Whatever degree of skill, ability, or efficiency the Northern National Bank was required by the terms of the original agreement to exercise in liquidating the affairs of the Farmers & Merchants Bank, the appellant here expressly stipulates that it shall not be "answerable or accountable under any circumstances whatever, except for gross neglect or wilful misconduct." No delinquency of that character on the part of the Northern National Bank is alleged by appellant in his answer, and by the stipulation quoted it seems plain that the appellant himself has released the Northern National Bank for any lapses or delinquencies of a lesser character.

Another allegation stricken out is to the effect that there is "due from the stockholders of said bank $50,000 by reason of their statutory liability, but no attempt has been

made to collect the same, although at least $20,000 thereof is collectible, as this defendant is informed and believes." We are at a loss to perceive how this fact constitutes a defense to this action, and we find no elucidation of the subject in the briefs of counsel. The statutory liability referred to is evidently that imposed by sec. 221.42, Stats., which makes stockholders of a bank liable for the benefit of creditors of the bank to the amount of their stock. This liability becomes due when the commissioner of banking takes possession of the bank, and may be enforced by him in an action in his name. The Northern National Bank had no authority to enforce this liability, neither did the contract between the two banks attempt to impose any such duty on the Northern National Bank. The terms of the bond obligated the signers to reimburse the Northern National Bank for all sums necessary to pay the debts of the Farmers & Merchants Bank beyond that realized from the assets (not the liability of the stockholders) of the Farmers & Merchants Bank. Plainly this allegation was properly stricken.

Another allegation the striking of which is complained of, is to the effect that there has been no accounting between the State Bank and the National Bank, and that the defendant is unable to state the amount collected from the assets of the State Bank by the National Bank; that he is interested in said accounting as a stockholder in said State Bank and as a party to the bond, in that the State Bank is primarily liable thereon, and the extent of the liability of the sureties cannot be ascertained until an accounting of the trust by said National Bank is had. The defendant agreed in the agreement of April 12th that the account due the National Bank was as therein stated. True, it was provided in the agreement that the amount so stated was subject to audit. This entitled any one interested to an audit or an accounting of the amount realized by the National Bank from the assets of the State Bank. Prior to the commencement of this ac-

tion the appellant had not asked for such an audit or accounting. All others acquiesced in the amount stated in the agreement of April 12, 1924. In his answer the appellant does not even ask for such an accounting. He does not deny that the amount therein stipulated was the amount due. He simply says he does not know whether it was or not because an accounting has not been had. Such an allegation is not sufficient to put in issue the amount due the National Bank. Certainly this allegation constituted no defense to the action.

One allegation in the answer was stricken out which perhaps is of a little greater dignity than the others already considered. That allegation is "that at a meeting of the directors held a short time prior to the sale of said bank, it was stated by Dillon and Schlecht in the presence of Binsfield, to all of said directors including this defendant, that there was personal liability on the part of each and every director to the depositors and creditors of said bank, and this defendant believed and relied on such statements, which were untrue so far as he was concerned; that when he signed the guaranty of $125,000 to Northern National Bank, it was on account of said false statements and information." Obviously if the defendant was induced to sign the bond by reason of false representations made by the one who seeks contribution from him, such fact should be a defense to an action by the one who thus fraudulently induced him to sign the obligation. However, so far as this allegation reveals, the misrepresentation was one purely of law. No misrepresentation of fact is alleged. The appellant was a member of the board of directors, and any facts upon which such liability could be predicated were presumably within his knowledge. While under some circumstances a misrepresentation of law may constitute actionable fraud, such is not the general rule, and this allegation does not fall within the exception. 12 Ruling Case Law, pp. 295 and 296. We hold that

the allegation fails to state an actionable fraudulent representation. No error arose from the striking of any of the allegations.

It is further contended that the agreement of April 12, 1924, constituted an accord and satisfaction and released the sureties. It will serve no good purpose to recite the provisions of this agreement. Suffice it to say that in our opinion the agreement is susceptible to no such construction, and that such was far from its purpose. Its purpose was not to release the obligors on the bond, but was to extend them favors and accommodations in the matter of meeting their obligations under the bond. The intent to continue the obligations of the bond on the part of all parties is plain and unambiguous. We find no error in the record.

*By the Court.*—Judgment affirmed.