CITY OF CUDAHY, Plaintiff, vs. FIRER and others, Defendants. [Cross-appeals.]

*May 9—June 26, 1934.*

601

602

For the appellant Maryland Casualty Company there were briefs by *Coleman & Barry,* attorneys, and *James E. Coleman* of counsel, all of Milwaukee, and oral argument by *Mr. Coleman* and *Mr. Barry.*

*Douglass Van Dyke* of Milwaukee, for the cross-appellant and respondent Fidelity & Deposit Company of Maryland.

For the respondent City of Cudahy there was a brief by *L. S. McParland* of Milwaukee, and *W. J. Riley* of South Milwaukee.

FAIRCHILD, J.   There are involved in this case three different funds over which Firer, in his capacity of treasurer, exercised control.   These are the City of Cudahy General Fund, hereafter called the city general fund; the School District No. 1 Bond Redemption Fund, hereafter called the school fund; and the Vocational Educational Fund, hereafter called the vocational fund.

When Firer entered upon his duties as city treasurer in May, 1928, the Fidelity & Deposit Company became surety upon his bond for the faithful performance of his duties as treasurer.   By virtue of his position he was *ex officio* treasurer of the local board of vocational education, and in July there was added to his duties those of treasurer of the city school district, whose territorial limits were the same as those of the city of Cudahy.   This was under and in accordance with the city school plan provided for in secs. 40.50 to 40.60, Stats.   After qualifying as city treasurer, his duties as such were increased by his becoming treasurer of the city school district, and he filed with the board a bond similar in form to the statutory official bond of the city treasurer. This bond recited the selection of Firer as school treasurer, the premium was paid from the school funds to the surety company which received and kept them.   The learned trial judge held this bond to be a valid bond and that it covered the separate trust funds of the school district.

It appears from the evidence that in the latter part of Firer's first term as city treasurer he misappropriated the two items referred to in the statement of facts. To avoid detection, which became likely because of an impending audit of the city general fund, on the last day of the term Firer took $5,500 from a certificate of deposit payable to the school fund and transferred this cash to his bank account as city treasurer, thus bringing into balance the account which would otherwise have disclosed the embezzlement of the $5,500. When the city general fund was audited a day or so later, the embezzlement escaped detection. There was no audit of the school fund.

In determining that some liability for this shortage rested upon the Maryland Casualty Company, the court below found that the initial misappropriation of $5,500 was a breach of the bond of the city treasurer, and also that the misappropriation of the $5,500 from the certificate of deposit of the school district was a breach of the Fidelity & Deposit Company bond and of the Maryland Casualty Company bond; determined further that the actual shortage of the $5,500 was in the funds of the school district at the close of the term; concluded that both bonds were primarily liable for this shortage and that there should be contribution between the two sureties in the ratio of the penalty of their bonds, except for the additional item of $31.20, which by reason of interest and expenses in connection therewith amounted to $45.22, for which the city treasurer's bond was solely liable. This ruling would be correct if the shortage and ultimate loss may lawfully be held to fall upon the school fund. *Shepard v. Pebbles,* 38 Wis. 373; *German-American Sav. Bank v. Fritz,* 68 Wis. 390, 32 N. W. 123; *Estate of Koch,* 148 Wis. 548, 134 N. W. 663; *Schlecht v. Anderson,* 202 Wis. 305, 232 N. W. 566; *Cudahy v. Firer, post,* p. 607, 255 N. W. 904.

The real issue between the sureties relates to the effect of the transfer of the $5,500 from the school fund to the city

general fund, made by Firer after his embezzlement in an effort to conceal his default. The money that is actually missing from the city's treasury is $5,500 and the item of $31.20. The $5,500, which passed out of the possession of the city and was converted to the use of Firer, was taken from the city general fund. One surety, the Maryland Casualty Company, contends that the transfer should be disregarded and the liability between the sureties determined solely by considering the source of the initial misappropriations. The other surety, the Fidelity & Deposit Company, insists that the transfer must stand and the liability between the sureties determined by the shortage created by the transfer.

It has been contended that because the city of Cudahy is the legal owner of all the funds here involved the transfer by Firer of money from one fund to another cannot constitute embezzlement. *State ex rel. Board of Education v. Racine,* 205 Wis. 389, 236 N. W. 553. Whether the withdrawal of money from one fund legally held by a trustee for a certain purpose and transfer thereof to another fund legally held by the same trustee, but for a different purpose, constitutes embezzlement within the meaning of sec. 343.20, Stats., we need not decide. The bonds in question cover the faithful discharge by Firer of his duties as treasurer, and sureties become liable for loss resulting from failure so to discharge such duties. Firer's original embezzlement was in violation of that duty. His later transfer of money from the school fund to the city general fund was also a violation of that duty. The only question is which act resulted in damage.

The fact that the city of Cudahy is legal owner of both these funds does not give it an absolute right to transfer money from the school fund to the city general fund whenever it sees fit to do so. If the transfer from the school fund to the city general fund had constituted a *bona fide* payment of Firer's indebtedness to the latter, the school

fund could not compel repayment. But we do not consider that that transfer can be considered such a payment as to entitle the city general fund to retain it. It was not so understood or intended. There was no accounting nor any semblance of one. The city did not know that Firer was indebted to it. Firer was the sole representative of the city in this transaction, the only person who had any knowledge of it, and even if he did intend it as payment, it is rendered ineffectual because of his fraud. *Atlantic Cotton Mills v. Indian Orchard Mills,* 147 Mass. 268, 17 N. E. 496; *Atlantic Bank v. Merchants' Bank,* 10 Gray (76 Mass.), 532; *Newell v. Hadley,* 206 Mass. 335, 92 N. E. 507; *First Nat. Bank v. Dunbar,* 118 Ill. 625, 9 N. E. 186; *Holden v. New York & Erie Bank,* 72 N. Y. 286; *First Nat. Bank v. New Milford,* 36 Conn. 93. If the city general fund could rightfully retain the money transferred to it from the school fund, the loss would fall on the latter, and the Fidelity & Deposit Company and the Maryland Casualty Company would be jointly and severally liable, but as the money must be returned to the school fund, the loss falls on the city general fund, and the Fidelity & Deposit Company alone is liable.

The Fidelity & Deposit Company has urged the equitable doctrine exemplified by *Price v. Neal,* 3 Burr. 1354 (*S. C.* 1 Wm. Bl. 390), to the effect that as between two persons having equal equities, one of whom must suffer, the legal title shall prevail. Ames, *The Doctrine of Price v. Neal,* 4 Harvard Law Review, 297. The application of that doctrine to such a case as this presupposes a *bona fide* holder for value, and as no *bona fide* holder appears and the equities are not equal, the doctrine has no application.

The transfer by Firer, shortly after the beginning of his second term, of $5,500 from the vocational fund to the school fund for the purpose of covering up his shortage in the latter, is controlled by the same rule which we have expressed with respect to the transfer, for a similar purpose,

during his first term of the $5,500 from the school fund to the city general fund. It is not necessary to discuss other problems which arise where such transactions extend over more than one term. Under the circumstances of this case, this rule applies to a transfer made to cover up a shortage. The• vocational fund is entitled to recover the money so transferred from the school fund, and the school fund, in turn, recovers it from the city general fund. The ultimate loss thus falls on the city general fund and its surety. Neither of the other funds suffers any damage, and consequently there exists no liability on the part of their sureties.

*By the Court.*—The portion of the judgment which fixes liability upon the Maryland Casualty Company is reversed, and the cause remanded with directions to enter judgment against Firer and the Fidelity & Deposit Company in accordance with this opinion.