CITY OF CUDAHY, Plaintiff, vs. FIRER and others, Defendants. [Cross-appeals.]

*May 9—June 26, 1934.*

For the appellant Maryland Casualty Company there were briefs by *Coleman & Barry*, attorneys, and *James E. Coleman* of counsel, all of Milwaukee, and oral argument by *Mr. Coleman* and *Mr. Barry*.

*Douglass Van Dyke* of Milwaukee, for the cross-appellant and respondent Fidelity & Deposit Company of Maryland.

For the cross-appellant and respondent United States Fidelity & Guaranty Company there was a brief by *Lines, Spooner & Quarles*, attorneys, and *C. B. Quarles* of counsel,

and oral argument by *Maxwell Herriott,* all of Milwaukee; and for the cross-appellant and respondent Ætna Casualty & Surety Company by *Quarles, Spence & Quarles,* attorneys, and *K. P. Grubb* and *L. J. Burlingame* of counsel, all of Milwaukee.

For the respondent City of Cudahy there was a brief by *L. S. McParland* of Milwaukee, and *W. J. Riley* of South Milwaukee.

FAIRCHILD, J. This case was tried in the court below with the case of *Cudahy v. Firer,* decided herewith (*ante,* p. 599, 255 N. W. 901), and was argued in this court at the same time that case was argued. The principles of law there discussed control the decision here.

During his second term, Firer embezzled from the City of Cudahy General Fund $30,072.35. He returned $3,000 from his own funds. From the Vocational Educational Fund he embezzled $4,532.10, returning from his own funds $2,450. From the School District No. 1 General Fund he embezzled $115.71. The abstraction of money so made resulted in a loss to the city general fund of $27,072.35, to the vocational fund of $2,082.10, and to the school fund of $115.71, making a total loss occurring during the second term of $29,270.16.

Some of the wrongful withdrawals made by Firer from these funds were for the purpose of extracting money for his own use. Others were transfers from one fund to another for the purpose of concealing previous defalcations. Under the decision of *Cudahy v. Firer, supra,* the liability for misappropriations and the loss resulting therefrom rests upon the sureties who undertook responsibility for maintaining the integrity of the funds from which Firer actually took money and put it into his own pocket. Because of the circumstances existing in this case, which are in effect treated in the decision referred to, we hold that the embezzlement or first misappropriation of the moneys from the different

funds fixed the liability of the sureties, and that Firer could not redistribute that liability by resorting to the methods he did in order to conceal the fact that he was a defaulter.

As between the sureties, it is our conclusion that the three sureties on the city treasurer's bond are responsible for the loss caused by all his defalcations, including a share of the responsibility for his embezzlements from the school fund. The fact that the Maryland Casualty Company bond covered the school funds only, whereas the other bonds covered not only the school funds but also the city general and the vocational funds, does not relieve such others from having to bear, along with the Maryland Casualty Company, the loss involved in the school fund. The situation here is similar to that in *Burnett v. Millsaps,* 59 Miss. 333, where a sheriff, who had given both an official bond and a bond as tax collector, failed to pay over taxes collected by him. In an action for contribution, the court held that the fact that the sureties on the official bond were also liable for other acts of the officer, as to which the sureties on his bond as tax collector were not bound, did not affect the mutuality of their obligation as to those acts and defaults for which they were both bound. This same rule has been followed in other jurisdictions. *Elbert v. Jacoby,* 8 Bush (71 Ky.), 542; *Cherry v. Wilson,* 78 N. C. 164. See also 24 Harvard Law Review, 487. The doctrine has been generally recognized and followed in the analogous case of concurrent blanket and specific insurance policies. Richards, Insurance Law (3d ed.), p. 437, § 318.

The case of *Newcomb v. Ingram,* 211 Wis. 88, 243 N. W. 209, 245 N. W. 121, 248 N. W. 171, has been referred to as establishing a rule contrary to that just stated. In that case there were three bonds, one covering Ingram's duty as executor only, another covering his duty as trustee only, and the third covering his duty as executor and trustee. Because of the intention of the parties to those instruments, this court held that there could be no contribution between the sureties

on the first executor's bond and the first trustee's bond, and that the surety on the trustee's bond was primarily liable for losses occurring during the existence of the trusteeship. So far as that feature is concerned, Ingram's default consisted in taking from the trust fund money which he, in violation of his duty as executor, had wrongfully paid over from the executor's fund to the trust fund. There were two distinct funds, the executor's fund and the trustee's fund; two distinct bonds, one covering the executorship only, the other the trusteeship only; and two distinct wrongful acts by Ingram, one the act of turning over without authority money from the executorship to the trusteeship, the other the misappropriation of the money from the trusteeship. The only question was which act resulted in loss, and the court rightfully held that it was the act of misappropriation, not the act of transfer, which caused the loss, and that the surety covering Ingram in the capacity in which he accomplished the misappropriation was primarily liable.

The instant case presents a very different situation as far as the misappropriation from the school fund is concerned. There is but one wrongful act on the part of Firer with relation to that fund, and that is the embezzlement of the $115.71. There is but one fund involved, namely, the school fund. The two types of bonds, i. e., the city treasurer bonds and the school treasurer bond, instead of each covering a particular fund and that fund only, as was the situation in the Ingram Case, both cover the same identical fund, the school fund. To such a situation the rule of the Ingram Case has no application.

As to the city general fund and the vocational fund, the Maryland Casualty Company, by the specific terms of its bond, is not liable, and the losses therefrom must be borne entirely by the other three sureties in the proportion of the amounts of the penalties of their respective bonds. Newcomb v. Ingram, supra; Armitage v. Pulver, 37 N. Y. 494; 18 Ann. Cas. 853; 64 A. L. R. 213, 218. As to the school

fund, all four companies are cosureties and must contribute. There is considerable confusion in the courts as to the proper method of determining the ratio of contribution in cases where there is a loss both from the fund covered by the specific bond and from the fund covered only by the general bond. 24 Harvard Law Review, 487. The most equitable method, however, and the method which is generally followed in the analogous case of general and specific insurance, is based on a rule which we consider controlling. It requires the general bonds to pay first the losses from funds which they alone cover, namely, the city general and vocational funds, and then to contribute with the specific bond, in the proportions which their bonds, thus reduced, bear to the amount of the latter, to pay the losses from the school funds. Richards, Insurance Law (3d ed.), p. 437, § 318.

*By the Court.*—The judgment is modified by reducing the amount for which the Maryland Casualty Company is liable from $17,865.71 damages, plus $2,009.89 interest and $51.61 costs, to $115.71 damages, plus $13.03 interest and $51.61 costs; and further modified to provide that if any one or more of said sureties shall have paid on account of said judgment an amount in excess of the following, to wit: Fidelity & Deposit Company, $11,682.82, plus $1,328.19 interest and costs; United States Fidelity & Guaranty Company, $8,762.12, plus $999.37 interest and costs; Ætna Casualty & Surety Company, $8,762.12, plus $999.37 interest and costs; Maryland Casualty Company, $63.10, plus $20.01 interest and costs, such surety or sureties shall be entitled to judgment for reimbursement from the surety or sureties which have failed to pay their proportionate part of said judgment as hereinbefore set forth. As so modified, judgment is affirmed, appellant Maryland Casualty Company to recover costs.